GEORGE MONELL,         *Appellant,*

*against*

WILLIAM LAWRENCE, JOHN WOODS, and WILLIAM W. SACKETT. } *Respondents.*

THIS was an appeal from an order of the court of chancery.

On the 18th of *September*, 1812, the respondent, *William Lawrence*, filed his bill in the court of chancery, for the sale of certain mortgaged premises, situate in *Newburgh*, in *Orange* county, which had been mortgaged to him, the 1st of *August*, 1810, by the respondent, *William W. Sackett*, to secure the payment of 3,500 dollars, with interest. The bill stated that the appellant, *Monell*, was the owner of a *judgment*, obtained by *Daniel Austin* and *David Andrews*, against *Sackett*, in the supreme court, in *October* term, 1811, for 1,114 dollars; *Monell* had also another judgment against *Sackett*, obtained in the supreme court, in *October*, 1812, for 375 dollars. In *June*, 1812, *Edmund Griswold* also obtained a judgment in the court of common pleas, of *Orange* county, against *Sackett*, for about 90 dollars.

Some time in *July*, and before the 30th day of that month, *Sackett* executed two bonds, with warrants of attorney to confess judgment, to *John Woods*, the respondent, his maternal brother, for about 4,800 dollars, on which a judgment was entered up, the 3d of *August*, 1812; and on the 30th of *July*, 1812, *Sackett*, and his wife, conveyed the mortgaged premises and other lands to *Woods*, in fee; *Sackett* being then insolvent, and in prison. A separate instrument was, at the same time, executed by *Woods*, to *Sackett*, declaring that the lands so conveyed to him, were in *trust*, for the benefit of all the creditors of *Sackett*, and the overplus, if any, in trust for *Sackett*.

L., a mortgagee, filed a bill against S. and others, for the sale of the mortgaged premises, and to which suit M., who had purchased a judgment against the mortgagor, was a party. After a decree for a sale had been entered, by the consent of the solicitors of all the parties, M. sued out execution on his judgment against S., under which his interest in the mortgaged premises was sold by the sheriff at auction, and M. having become the purchaser, at the sheriff's sale, of the equity of redemption, offered, before the day fixed by the decree for the sale, to pay to the solicitor of L. all the principal and interest due on the mortgage, if L. would assign the mortgage to him, which L. refused to do. M., the next day, paid to L.'s solicitor the principal and interest due on the mortgage, and took a simple receipt for the amount, without expressing it to be in satisfaction of the mortgage, and the parol evidence that it was made as a deposite, and not for the redemption of the mortgage; M., afterwards, and before the day of sale, obtained an order to stay the sale; but the master, having no notice of this order, proceeded, and sold the premises at auction, under the decree, and executed deeds to the purchasers. HELD, that the sale was valid and effectual, and that the rights of the innocent and bona fide purchasers could not be affected by the order staying the sale.

It seems, that all persons are bound to take notice of decrees in chancery, as well as judgments at law, but not of interlocutory orders.

It seems, that if a party is present in court, and has knowledge of any order or proceeding of the court, and does an act contrary to it, it is a contempt. A decree, entered by consent of the solicitors or counsel of the parties, cannot be set aside on motion, unless there be fraud or collusion between the solicitors or counsel.

Where a decree is entered by consent, there can be no rehearing; but the party, in case of fraud or collusion, must seek relief by an original bill In consequence of the statute direction (sess. 36. ch. 95. s. 11.) relative to sales of mortgaged premises, by a master, under a decree of chancery, it is not necessary that the report of the master, as to the sales, should be confirmed, before deeds are executed to the purchasers. The rule of the *English* chancery, on this subject, is not, therefore, applicable.

IN ERROR.
.......
ALBANY,
February, 1815.

MONELL
v.
LAWRENCE.

*Sackett, Monell,* and *Woods,* who were all parties to the bill, answered separately.

*Sackett,* in his separate answer, admitted the facts stated in the bill, and set out the trust contained in his conveyance to *Woods ;* declined to redeem ; consented to a sale of the premises ; and prayed his rights to the surplus, if any, after paying *Lawrence,* might be preserved to him.

*Woods,* by his separate answer, in like manner, admitted the facts in the bill ; set out the trusts in the deed to him ; declined redeeming the mortgaged premises ; consented to a sale ; and prayed that the surplus of the proceeds, after paying *Lawrence* and *Monell,* might be paid to him, or applied pursuant to the trusts.

*Monell* not having appeared in due time, a decree, *pro confesso,* was taken against him ; but in *January,* 1813, and after an order of reference had been made in the cause, *Monell,* by permission of the court below, filed his answer, in which he consented, and prayed that the mortgaged premises might be sold in the month of *May* then next, and that the money arising from the sale might be disposed of as to the court should seem equitable. He also, by consent, filed an additional answer, setting forth a judgment obtained by himself and *Hiram Weller,* against *Sackett,* since the filing the bill of *Lawrence.*

On the 6th of *March,* 1813, an agreement was made, and signed by the solicitors of all the parties, consenting " that the mortgaged premises should be sold by a master of the court, on or after the 15th of *May* next ; that the proceeds of such sale should be paid into court ; and that the complainant should receive the amount of his debt and costs ; and that the rights of the defendants to the surplus be preserved to them respectively ; and a decretal order was made, pursuant to this agreement, which was delivered to *Jasper Lynch,* one of the masters in chancery, to be executed. The master, on the 6th of *April,* reported the sum of 3,911 dollars, and 46 cents, due to *Lawrence* on the mortgage, and advertised the premises for sale on the 19th of *May* following.

Pending these proceedings, *Griswold,* the judgment creditor, and not a party to the bill, took out execution, and sold *Sackett's* interest in the mortgaged premises, at auction, and *Monell* became the purchaser of the equity of redemption, for 1,200

dollars, and took the sheriff's deed, subject to the mortgage and the wife's dower. *Monell* immediately commenced an action of ejectment against the tenant of *Woods*, and came to *New-York*, where, on the 7th of *May*, he offered to purchase the mortgage of *Lawrence*, who refused to assign it.

IN ERROR.
.......
ALBANY,
February, 1815.

MONELL
v.
LAWRENCE.

On the 8th of *May*, 1813, Mr. *Burr*, solicitor for *Monell*, addressed a note to Mr. *Jay*, solicitor for *Lawrence*, stating that *Monell*, having purchased the equity of redemption, and being disposed to pay off the mortgage, it would be an unnecessary expense to proceed to a sale; that Mr. *Lawrence* refused to reinvest the amount; that it would be inconvenient to Mr. *Monell* to attend the sale on the 19th, and asking for a postponement for 15 days; and that he would, in the mean time, if desired, deposite with the register the principal and interest due to *Lawrence*. To this Mr. *Jay* answered, that, to his knowledge, Mr. *Lawrence* had not refused to permit *Monell* to redeem the mortgage; that he (*Jay*) was " still ready to receive the principal, interest, and costs, and stop all further proceedings;" that he had only refused to give an assignment of the mortgage to *Monell*, for the purpose of defeating a trust for the benefit of *Sackett's* creditors, a purpose which appeared to him iniquitous; and that he, therefore, saw no reason for delaying a sale. On the same day, *Monell* called on Mr. *Jay*, and offered to pay him the money due on the mortgage, and the latter consented to receive it and cancel the mortgage; but *Monell* said he was advised that he had a right to an assignment of the mortgage; that he should apply to the chancellor for an order to stay the sale, and compel an assignment, and would deposite the money in one of the banks, complaining that he should lose his interest. Mr. *Jay* then told *Monell*, that he might, if he pleased, pay the money to him, and the sale should be postponed to the 3d of *June*; and if it then took place, the money should be refunded, with interest. To this *Monell* assented, and paid Mr. *Jay* 3,930 dollars and 90 cents, who paid over the same to *Lawrence*; but nothing was said about costs. The following receipt was given to *Monell*:

" Received, *May* 8th, 1813, from Mr. *George Monell*, one of the defendants in this cause, three thousand nine hundred and thirty dollars, and ninety cents.

" *P. A. Jay, Solicitor for Complainant.*"

*IN ERROR.*
·······
ALBANY,
February, 1815.

MONELL
v.
LAWRENCE.

On the 3d of *June*, notice was given, by *Monell's* solicitor, of an application to be made to the chancellor, on the 7th of *June*, for an order to dismiss the bill of the plaintiff, and to direct him to file the mortgage with the register. The chancellor refused to dismiss the bill, but ordered the mortgage to be filed.

On the 22d of *June*, the solicitor of *Monell* gave notice to the solicitor of *Lawrence*, of a motion to be made for an order to stay the sale. On the urgent request of the solicitor of *Monell*, the solicitor of *Lawrence* consented, on the 17th of *June*, to stay the sale for a fortnight, and offered to discontinue the suit, and dismiss the bill, if *Monell* would pay all the costs; but the solicitor of *Monell* insisted that he had a right to redeem, without paying the costs of the other defendants.

On the 1st of *July*, 1813, no order to stay the sale having been received by *Lawrence*, or his solicitor, or the master, the premises were sold at auction in lots, and it was not pretended that the sale was unfair, or at an under value. It appeared, however, that the chancellor had, on the 29th of *June*, at *Albany*, made an order, staying the sale until the further order of the court. A copy of this order was received by the solicitor of *Monell*, on the morning of the 2d of *July*, who immediately showed it to the master, who informed him the sale had taken place the day before, but no deed had been delivered.

On the 21st of *July*, 1813, upon the application of *Monell's* solicitor, an order was made by the chancellor, that the master should abstain from delivering any deed of the mortgaged premises, until the further order of the court; and that the plaintiff, *Lawrence*, show cause, on the first day of the next term, why the sales of the mortgaged premises should not be set aside.

*Lawrence* showed cause, and on the 10th of *September*, 1813, the chancellor ordered the sales made by the master to be confirmed, and that the master should execute the deeds of conveyance to the purchasers, and apply the proceeds of the sale conformably to the decree entered, by consent, in the cause; and that *Monell* pay the costs which had accrued on the order to show cause.

From this order *Monell* entered his appeal; but no notice of the appeal was given to *Lawrence*, or his solicitor, or to the master, until a month after deeds had been delivered to the purchasers.

It has not been deemed necessary to state, particularly; all the facts contained in the different depositions which were read, as such as are material will be found in the opinion of the judges.

*Burr*, for the appellant, contended, 1. That an equity of redemption may be sold on a *fi. fa.*, and that *Monell*, having acquired the right of redemption by the purchase at the sheriff's sale, his *tender* of the principal and interest due to *Lawrence*, on the 7th of *May*, 1813, extinguished all right in him to proceed further on the mortgage; but he became, afterwards, a *trustee* of the mortgage, for the benefit of *Monell*.*

2. That the payment of the money due on the mortgage to the solicitor of *Lawrence*, and the mortgagee having received the money, on the 8th of *May*, was a full satisfaction and discharge of the mortgage; and all the subsequent proceedings were unnecessary, vexatious, and oppressive.

3. That the subsequent sale, by the master, on the 1st of *July*, was irregular and unjust.

Judicial proceedings take effect from the time they are made; there was no necessity for notice of the order of the 29th of *June* to the master. It was made, after hearing of counsel on both sides.† It was known immediately to the counsel of Mr. *Lawrence*.‡ It is the same at law. The allowance of a writ of error immediately stays execution.

The chancellor, in his order of the 10th of *September*, proceeded on the ground that the former order was a final decree. But it was not so to the extent that it could not be opened; for there are many cases in which the proceedings are again opened, after a decree, and even after a confirmation of the master's report.§

But the proceedings of the master, in regard to the sale, were irregular; for the report had never been confirmed.‖ Besides, the authority of the master was suspended, after the mortgage was ordered to be deposited with the register.

A party may better his title during the pendency of a suit.**

*Henry*, contra, contended, that, whatever the rule may be in *England*, it was not necessary, here, that the master's report should be confirmed, before he was authorized to proceed further. By our statute,†† full power is given to the master to sell

Vol. XII.    3 X

IN ERROR.
ALBANY,
February, 1815.

MONELL
v
LAWRENCE.

* *Manning* v. *Burgess*, 1 *Ch. Rep.* 29.   3 *Atk.* 90. n.

† 3 *Atk.* 394. 564.   2 *Bro. Ch. Cas.* 141.   *Mosely*, 202.
‡ 2 *Harr. Ch. Pr.* 141.   *Wyatt's Pr. Reg.* 299.

§ 2 *Bro. Ch. Cas.* 475.   4 *Bro. Ch. Cas.* 172.   6 *Bro. P. C.* 148. old ed.
‖ *Wyatt's Pr. Reg.* 379, 380.
11 *Vesey*, 559.

** 11 *Vesey*, 610.   5 *Bro. P. C.* 292, 298.   (*Tomlins' ed.*)

†† 1 *N. R. L.* 490. sess. 36, ch. 95. s. 11.

*IN ERROR.*
......
ALBANY,
February, 1815.

MONELL
v.
LAWRENCE.

* 3 Atk 809.
2 Vesey, 488.
1 Ves. jun. 93.
3 Bro. Ch. Cas.
74 Ambler, 229,
1 Anstr. 81. 1
Bro. P. C. 468.
(Tomlins' ed.)

mortgaged premises under decrees of the court of chancery, and to give deeds to the purchasers. The decree for the sale had been entered, *by consent*, under an agreement entered into between the parties, on principles of perfect equity; and that decree could not be set aside or modified by motion, or any summary proceeding, founded on matter arising after the decree;* more especially as *Sackett* and *Woods*, the parties to be affected by such proceeding, had no notice thereof, and had no opportunity of defending their rights. *Monell* should have filed his original bill, and stated the supplementary matter. The purchasers at the master's sale ought to have been brought in as parties, in order to defend their rights. *Monell* could not bring forward this new matter on his motion, and so make himself a witness in his own cause. Besides, he does not stand before the court with perfectly clean hands; nor does he show any equitable grounds for his claim to an assignment of the mortgage, having, after the decree, by consent, procured the equity of redemption to be sold, for the purpose of defeating creditors, and not only to prevent a sale of the premises at a fair and just price, but that equitable distribution of the proceeds which would, otherwise, take place under the decree.

The sales of the master were made fairly, and at adequate prices, and pursuant to the decree, without any notice of any order by which his proceedings could be suspended.

YATES, J. The decree in this cause, of the 6th of *March*, 1813, being by consent, under an agreement between the parties, it is insisted that it cannot be modified, or set aside, upon motion, for matter arising afterwards.

This is a correct principle as to matters arising subsequently, and so connected with the subject of the decree as to change the intent of it, but can never be urged to avoid a benefit resulting to a party by a subsequent act not inconsistent with, but in furtherance of, that part of the decree in which the respondent has an interest, and to which (if the allegation is substantiated) he must have assented.

The object of the respondent's bill, in the court below, was to effect a sale of the mortgaged premises by the master, to recover, out of the proceeds, the sum due to him; and although the subsequent purchase of the equity of redemption, by the appellant,

could not destroy the respondent's priority for the payment of the amount due on his mortgage, according to the decree by consent, (which certainly could not be altered in that respect,) yet the rights of the appellant and the other defendants, in the court below, being reserved to them respectively, the question as to priority remained open, and was a subject for future investigation by the court; and, until that was settled, the appellant had a right to better his case, by purchasing the equity of redemption.

The decision of this cause, however, wholly depends upon the nature of the payment made to Mr. *Jay*, the solicitor of the respondent. If, then, on an examination of the evidence, it should turn out to have been in extinguishment of the mortgage, the subsequent proceedings must be nugatory, as founded on an instrument which had ceased to operate, and the order of the court of chancery ought to be reversed; but if it should be a mere deposite, the order ought to be affirmed.

From the correspondence between Mr. *Burr* and Mr. *Jay*, no correct conclusion, as to the nature of the payment, can be drawn. The former states that *Monell* was disposed to redeem, and had offered to pay the principal, interest, and costs, but that Mr. *Lawrence* refused to receive it; this the latter denies, and says that he only refused, in behalf of Mr. *Lawrence*, to give an assignment of the mortgage, and was still ready to receive the amount, and stop all further proceedings, but without assigning the mortgage, which, he said, could only be required for the purpose of defeating a trust for the benefit of Mr. *Sackett's* creditors, a purpose which appeared to him iniquitous; that, therefore, he saw no reason for delaying a sale of the premises; and the receipt, subsequently given by him in the same cause for the amount, does not purport to be in extinguishment of the mortgage, although that would be the inference, in the absence of other testimony on the subject; but it appears, from the evidence of Mr. *Jay*, confirmed by the testimony of *Jasper Lynch*, that this money was received at the instance of *Monell*, merely to save interest, and not with a view to redeem the mortgage. That this must have been the case, the subsequent conduct of the parties sufficiently evince. It certainly could not have been the understanding that all further proceedings should be arrested by it, as the time of sale was subsequently prolonged, at the request of the appellant and his

IN ERROR.
.......
ALBANY,
February, 1815.

MONELL
v.
LAWRENCE.

solicitor.' The amount paid, too, is confined to the principal and interest, without costs, a circumstance manifestly indicative of the character of the transaction.

I do not think that the situation of *Jasper Lynch* affords sufficient grounds to affect his credibility as a witness, or invalidate his acts, as a master. He was perfectly disinterested, and expressly declares that he had no connexion with the business of Mr. *Jay* in the court of chancery. His being a partner in other business (not in that court) could not disqualify him to perform duties in his official capacity, because Mr. *Jay* was the solicitor; nor can the sale made by him be set aside, merely because the order of the 29th of *June* had been made, unless positive notice of the existence of such order be brought home to him. This has not been done. The sale, consequently, is not irregular on that account; and the purchasers ought to be protected, unless it can be avoided for some other cause. They paid their money under a belief, and in full confidence, that the title to the property passed to them at the time the conveyances were executed by the master, according to the directions of the statute, which expressly declares that such deeds shall be as valid as if the same had been executed by the mortgagor and mortgagee. The *English* rule, requiring a confirmation of the master's report, is not applicable here. In *England*, proceedings are different: the master opens a book for biddings, and all remains in an unfinished state, and under the perfect control of the court, until the report of sales is confirmed. The master, there, has no authority to consummate the sale by executing a conveyance; that is done by the parties in interest only; and until a confirmation of his report, the whole of the business, in relation to the biddings transacted before him, continues open for the exercise of the discretion of the court. Here, the confirmation of the master's report, before the deeds are executed, is not essential; it has been rendered unnecessary by the statute, in giving the master authority to convey to the purchasers. The subsequent confirmation of the report of sales thus consummated, if the whole has been correctly and fairly conducted, follows of course.

It is objected, that the master's report, of the 6th of *April*, stating the sum of 3,911 dollars and 46 cents to be due to the respondent on the mortgage, has never been confirmed, and, therefore, the sales ought to be set aside for irregularity. Such

an objection cannot, at all events, avail the appellant in this case. His alleged payment, in extinguishment of the same mortgage, is a sufficient confirmation of this report, to prevent an advantage to him by this omission.

The master had no authority to arrest or postpone the sale, without due notice of the order of the 24th of *June*; and the circumstances urged, do not warrant the inference that he had such notice. They are too slight to implicate an officer, in whom it would have been criminal to have disregarded the order, by proceeding in the sale, notwithstanding his knowledge that it had been made. His proceedings appear to have been fairly and correctly conducted; and the sale thus made, by virtue of the decree, by consent, ought not to be vacated or set aside. My opinion accordingly is, that the order of the court of chancery, of the 19th of *September*, 1813, confirming the sales, and directing the master to execute deeds, *be affirmed.*

THOMPSON, Ch. J. It will be necessary to a right understanding of this case, and to arrive at a correct conclusion as to the rights of the parties, briefly to state the leading facts in the cause, and to keep in view dates, and the course and order of the proceedings. The respondent, *William Lawrence*, having a mortgage against *William W. Sackett*; and the defendant, *Monell*, having two judgments against *Sackett*; and the defendant, *Wood*, having a deed of the mortgaged premises, from *Sackett*, in trust for all his creditors, the respondent filed his bill to foreclose the mortgage; upon which the parties, by their respective solicitors, on the 6th of *March*, 1813, entered into an agreement, that the mortgaged premises should be sold under the direction of a master in chancery, on, or after, the 15th of *May*, then next, and the proceeds paid into the court of chancery; out of which *Lawrence* was to be paid the sum due him; and the rights of *Monell*, *Woods*, and *Sackett*, to the surplus of such proceeds, to be preserved to them respectively. A decree was thereupon entered, pursuant to this agreement, and a reference made to a master to ascertain the sum due on the mortgage, and to proceed to a sale of the mortgaged premises. According to the agreement, the master advertised the sale for the 19th of *May*. After entering the decree, and before the day of sale, *Sackett's* interest in the mortgaged premises was sold under an execution, issued upon a judgment in favour of *Edmund Gris-*

IN ERROR.
......
ALBANY,
February, 1815.

MONELL
v.
LAWRENCE.

*wold*, for about 90 dollars; and of which judgment, *Monell* had become the proprietor; and upon this sale, *Monell* becomes the purchaser. His object will be seen by noticing the dates of the several encumbrances. The mortgage is dated the 1st of *August*, 1810. *Monell* had two judgments, in his own name, against *Sackett*. The one, of *October* term, 1811, for 1,114 dollars; and the other, of *October* term, 1812, for 375 dollars. *Griswold's* judgment, under which the sheriff sold, was obtained in *June*, 1812; and on the 30th of *July*, 1812, *Sackett* conveyed to *John Woods*, the mortgaged premises and other lands, in trust for all the creditors of *Sackett*. This deed being prior in date to *Monell's* last judgment, his object probably was to secure himself, and overreach this deed, by availing himself of *Griswold's* judgment, which was one month older than the deed. This might have been an honest struggle to secure his own debt; and if his proceedings and conduct, in relation to that sale by the sheriff, were fair, his object may be attained, if he can set aside the sale made by the master, under the agreement, and the decree of the court of chancery.

The regularity or fairness of the proceedings, under the sheriff's sale, are not now before us; the appellant, for some reason or other, appears to have been extremely solicitous to become the purchaser of the mortgage, and to have the same assigned to him. *Lawrence* was willing to receive the money due him, and *cancel* the mortgage. This, it seems, would not answer *Monell's* purpose, and he insisted upon having the mortgage assigned to him. The objection, on the part of *Lawrence*, against assigning the mortgage was, that it might be used to defeat the trust created by the deed to *Woods*, for the general benefit of *Sackett's* creditors. The mortgage money was, in point of fact, paid to *Lawrence*; the mortgage, however, neither cancelled nor assigned to *Monell*. And the first, and one of the principal questions in the cause is, whether this payment was made, and accepted, in satisfaction and discharge of the mortgage, or only as a deposite, and so as not to affect the sale by the master? I am fully satisfied that it must be viewed in the latter sense; and without prejudice to those proceedings. It is unnecessary to scrutinize minutely, what actually passed between *Lawrence* and *Monell*, on the 7th of *May*, when there was some pretence of a tender of the money due on the mortgage. The parties, according to their affidavits, appear to have understood very dif-

IN ERROR.
.......
ALBANY,
February, 1815.
MONELL
v.
LAWRENCE

ferently what passed on that occasion ; and were it necessary to decide between them, we should be bound, according to the rules of evidence, to give credit to the statement of *Lawrence*, as he is supported, in many particulars, by the testimony of *Lynch*. But this must be put entirely out of view ; for the subsequent arrangement made with Mr. *Jay*, in relation to the money, was a waiver of any thing that might have had the appearance of a tender.  It was the next day that the money was paid to Mr. *Jay* ; upon which, after stating the title of the cause, he gave a receipt as follows : " Received, *May* 8th, 1813, from Mr. *George Monell*, one of the defendants in this cause, 3,932 dollars and 90 cents." Nothing is to be collected from the receipt itself, as to the terms and conditions upon which the money was received.  It was a mere naked deposite, and is open to explanation from other testimony, to show the understanding of the parties.  It has been repeatedly ruled in the supreme court, that receipts may be explained, and even contradicted, by parol evidence.  The grossest abuses and frauds might be practised if bare receipts were to be deemed conclusive, and not open to examination. (1 *Johns. Cas.* 145.   2 *Johns. Rep.* 378.   5 *Johns. Rep.* 72.) And the same principle has been fully recognised by other courts.  (2 *Term Rep.* 866.   5 *Ves.* 87.   1 *Peters' Adm. Rep.* 179, 180.)   The parol evidence in this case, on the part of the respondent, does not contradict the face of the receipt, but is in perfect harmony with it ; and we must have recourse to this evidence to explain its meaning, and ascertain the intent and object which the parties had in view.   Mr. *Monell* certainly stands contradicted by Mr. *Jay* and Mr. *Lynch*, in many important particulars ; he says he paid Mr. *Jay* the full sum due on the mortgage ; (though he does not say it was so paid or received in satisfaction of the mortgage ;) that he offered to pay the costs, but they were not made out ; that he left money with his counsel to pay the costs, and thereupon left the city, (*New-York*,) believing the cause was at an end, and not having the slightest suspicion that any further proceedings would be attempted therein.   Mr. *Jay*, after stating the ineffectual attempts of Mr. *Monell* to procure an assignment of the mortgage, says, *Monell* informed him that he should deposite in one of the banks, the sum due upon the mortgage, and cause an application to be made to the chancellor on the subject.  That he, (*Jay*,) partly to oblige *Monell*, and, partly, sooner to obtain the money

due his client; told him he would receive it, and when a sale took place, he (*Monell*) should be repaid out of the proceeds thereof; with interest to the time of the sale. And thereupon, *Monell* paid him the money, stating that he did it to avoid losing the interest on the same. And that *Monell* then requested him to postpone the sale until the 3d day of *June*, to which he consented. That the sale was afterwards twice postponed, at the solicitation of Mr. *Burr*, but whether by the desire of *Monell*, does not appear. Mr. *Jay* further says, that when he received the money, he did not consider *Monell* as having redeemed the premises, but as making a deposite in his hands, to be returned with interest, out of the proceeds of the sale, if a sale should take place, or to be retained by *Lawrence*, if the court should direct an assignment of the mortgage, or the sale should be prohibited. Mr. *Lynch* says, he was present when the money was paid, and that *Monell* requested *Jay* to receive it, merely to save interest; and that it was understood, that it was to be repaid with interest, after the sale; and that *Monell* requested the sale to be postponed until some time in *June*. It is entirely impossible to reconcile the affidavit of *Monell* with those of *Jay* and *Lynch*; for if, as the former states, he paid the money, and went home, believing the cause at an end, and having no suspicion that any further proceedings would be attempted, why, as the latter states, did he solicit, and actually obtain a postponement of the sale; or why make any agreement for the repayment of his money, with the interest, out of the proceeds of the sale. There is not only two disinterested witnesses opposed to the affidavit of the party himself, but the whole course of the transaction furnishes a very strong presumption, that Mr. *Monell* must be labouring under some mistake, with respect to the terms upon which the money was left with Mr. *Jay*. His great and leading object was to obtain an assignment of the mortgage. This being utterly refused, he contemplated, according to his own declarations, an application to the chancellor on the subject; and it was probably to give him time to make such application that he wanted the sale postponed. This appears to me to be a fair and reasonable interpretation of his conduct. There is nothing contained in Mr. *Jay's* letter to Mr. *Burr*, inconsistent with the statement in his affidavit. But admitting that there is, it would not affect the present question, for these letters were written before the final arrange-

IN ERROR.
........
ALBANY,
February, 1815.

MᵒNELL
v.
LAWRENCE.

ment between Mr. *Jay* and Mr. *Monell*, which might have been
varied; and we may reasonably conclude it was varied; for
*Monell* thereby was to receive a substantial benefit, not in-
cluded in the proposition to Mr. *Burr*, viz. the interest of
his money, deposited with Mr. *Jay*. It is to the consummation
of a contract that we are to look for its terms, and all previous
negotiations are swallowed up and lost in the final arrangement.
From this view of this branch of the case, we are bound, I think,
to conclude that the payment made by *Monell*, was no redemp-
tion, or extinguishment of the mortgage, but a mere deposite
of money, to await further proceedings in chancery, and to be
disposed of as agreed between the parties, on the result of such
proceedings being known. This payment, or deposite, therefore,
could not affect the proceedings of the master, or operate as a
stay of the sale ; and there was no special agreement that could
have such effect ; and, indeed, directly the contrary is to be
inferred, for *Monell* was to receive back his money, with interest,
after the sale; which shows, conclusively, that the sale was to
take place, unless stayed by order of the court. And the next
inquiry is, whether any proceedings have taken place in the
court of chancery, which would affect the sale made by the
master. Mr. *Jay* having from time to time consented to the
postponement of the sale, until the 1st of *July*, application, on
the part of *Monell*, was made to the chancellor, on the 7th of
*June*, to dismiss the bill ; this was, however, denied : and on the
22d of the same month, another notice was given of a motion
to stay the sale. On the 29th of the same month, an order was
entered, which, among other things, directed the sale of the
mortgaged premises to be stayed ; but this order was not served,
or any notice thereof received, either by the master, or the
solicitor of the respondent, until after the sale had actually taken
place. The chancellor, afterwards, ordered the master to abstain
from giving any deeds for the mortgaged premises, until the
further order of the court, and that the respondent should show
cause, at the *August* term, why the sales should not be vacated.
But on cause being shown, the sales were confirmed, and deeds
ordered to be executed by the master, and the proceeds of the
sales to be applied conformably to the decree, by consent, in
*March* last.

It has been contended, on the part of the appellant, that the
order of the 29th of *June*, to stay the sale, suspended the au-

IN ERROR.
ALBANY,
February, 1815.

MONELL
v.
LAWRENCE.

thority of the master, and that all proceedings by him, afterwards, were void, although no notice of the order was given. This position is, in my opinion, untenable. Had this been a final decree, which went to the merits of the respondent's claim, there might have been some foundation for the argument; for all persons may be bound to take notice of decrees in chancery, as well as of judgments at law; (2 *P. Wms.* 483. 1 *Vern.* 286.;) but they cannot be bound to notice all interlocutory orders. It is true that a court of chancery looks with a jealous eye at the purchase of a right under litigation, and this for the purpose of preventing a fraudulent evasion of its decrees, by the parties. But where the sale is by an officer of the court, to whom no such fraudulent motive could be imputed, the rights of third persons, who are innocent, *bona fide* purchasers, under such sale, ought to be protected. If a party is present in court, and has knowledge of any order or proceeding, and does any act contrary thereto, he is guilty of, and punishable for, a contempt; but it by no means follows that such proceedings are to affect the rights of third persons, who were ignorant thereof. Suppose a judgment at law was obtained against a person, and an execution in the hands of a sheriff in a remote county, under which he had duly advertised for sale, but before the day of sale an order to stay proceedings was obtained, but notice thereof not given to the sheriff, or the plaintiff, or his attorney, and the sheriff should proceed and sell, could there be a doubt but that the purchaser would acquire a valid title? And should not a court of equity, equally with a court of law, protect innocent, *bona fide* purchasers? It would, certainly, be unprecedented to set aside the sale, without the purchasers being brought into court, in some way, and an opportunity afforded them of defending their rights, their titles having been consummated; and without their having received any notice of the order staying the sale, or of the present appeal, and there being no complaint of inadequacy in the price paid by them, or of any unfair practice in the sale. There is, also, another objection to the mode adopted by the appellant to obtain relief in the court below, even if an application for relief could in any way be sustained; it is an attempt to set aside, upon motion, a decree entered by consent of parties. This is against the established mode of proceedings in chancery. The case of *Harrison* v. *Rumsey,* (2 *Ves.* 488.,) came before the court upon petition; and Lord

*Hardwicke* said he would by no means set aside a decree obtained by consent of counsel on both sides, for it would be most dangerous, and it was an established rule not to do it, nor would he make the precedent. There was, he said, a good while ago, an appeal of that kind, in the house of lords, who desired the party to bring an action against the counsel: if they could prove collusion on the counsel, it would be a different thing; and, in the case of *Bradish* v. *Gee*, (*Ambler*, 229.,) the same lord chancellor said, where a decree is made by consent of counsel, there lies not an appeal or rehearing, though the party did not really consent; but his remedy is against his counsel. But if such decree was by fraud and covin, the party may be relieved against it, *not by rehearing, or appeal, but by original bill.* Independent of these difficulties, which I consider insurmountable, the general equity of the case appears to me to be against the appellant. There has been no suggestion that the decree by consent was obtained by fraud or imposition, or that the mortgaged premises were not sold for their full value; and he is now seeking to set aside this sale, made pursuant to his own agreement, for the purpose of vesting in himself, solely, the title, and to prevent the equitable distribution of the surplus among the creditors of *Sackett.* In whatever light, therefore, the case is considered, I am of opinion that the order of the chancellor, confirming the sales by the master, ought to be affirmed.

This being the opinion of a majority of the court,(*a*) it was, thereupon, ORDERED, ADJUDGED, and DECREED, that the appeal be dismissed, and that the order of the court of chancery be affirmed; and that the appellant pay to the respondents their costs in defending the appeal, to be taxed; and that the record be remitted, &c.

Judgment of affirmance.

(*a*) For affirming, 12. Mr. Justice *Spencer*, and ten of the senators, were for reversing.