Clayton, Special Judge,
delivered the opinion of the court.
The bill in this cause was filed by the legatees of Peter Jones, deceased, againstE. Ward, the executor, praying for an account and for a decree against the executor for such sum as may be found due to them. The account was ordered and was taken in the court below, exceptions were filed to it by both complainants and defendant, a decree was rendered for the complainants for a large sum, an appeal was taken to this court, and we have now to decide upon the correctness of *162 that decree, upon the exceptions filed to the report of the clerk and master. The record is voluminous and the questions growing out of it, although involving few important principles, are yet numerous and intricate. They relate to a long series of transactions, running through many years, and comprehending many particulars, incapable from their very nature of being generalised and reduced to system. Our opinion will, therefore, have to be given without much regard to the order in which the questions arise.
The first question which will be considered relates to an item of $'300, alledged to have been lent by the testator, Peter Jones, to the defendant, a few days before the death of the former. The answer denies all recollection that any such loan was made, the evidence in support of the claim is the deposition of Mrs. Watkins, the widow of the testator. A short time before the death of the testator, a settlement was made between him and the defendant Ward, upon which Ward executed his bond for the balance found due from him, and the testator gave a receipt in'full up to that time. Whether the testimony of Mrs. Watkins relates to a time prior or subsequent to this settlement does not very distinctly appear. If the loan were made before the settlement, it was embrace ed in it, if afterwards, the evidence should show the fact to be so. The answer is responsive to the bill, it contains as distinct a denial as should be required after the lapse of such a length of time, and we do not think it is so outweighed by the testimony as to anthorise us to allow the claim; neither is there any reason to charge the executor with this sum, because of his failure to reduce it into his possession as assets. Thefe is no evidence that he knew of its existence, either in the hands of the widow, or any other person, and in the absence of such testimony he cannot be charged with a de-vastavit. This exception is overruled,
The next exception which will be considered, is one on the part of the defendant, because of the rejection of an item of $714, which was paid by the executor, for the improvident expenditures of Alex. Jones, one of the legatees, whilst at college. It is claimed by the executor in his general account of disbursements, and he contends that the payment was au-. *163 thorised by the enlarged powers conferred on him by the will. It was paid from a conviction that it was best for young man; it was done to save him from disgrace-, a;id to preserve the elevated standing and character of the family. These feelings reflect credit on the man who could entertain and act upon them, but they cannot have weight in the determination of the cause. The question is purely legal1, and must be decided by the law. We think the payment by the executor was unauthorised, and that he is chargeable with the amount to the estate. 1 Roper on Leg. 589.
The question of interest upon this sum is one of moró complexity. It is insisted for the defendant that an executor is only to be charged with interest when he has received interest, or when he has used the money of the estate for himself. The rule thus laid down is too restricted. The language of this court in Turney vs. Williams, 7 Yer. 213, does not justify the conclusion, that an executor or administrator is only chargeable with interest in the cases there enumerated. In that case the court says, “Where an executor uses the money of the estate for himself; where he keeps the money by him without a reasonable ground for doing so; where by long delay in settling his accounts, the use of the money by him may be inferred, in all such cases interest will be charged. In specifying these instances the court no where intimates an intention to exclude others. The rule will be found to have been laid down with more latitude than is contended for in the argument. In Williams on executors, vol. 2, p. 1131, it is said, “there are two grounds on which an executor or administrator may be charged with interest. 1st-. Negligence in laying out the money for the estate. 2nd. That he has himself made use of the money to his own profit or advantage, or has committed some other misfeasance.” When we examine what the acts of misfeasance are, which will thus render an executor or administrator liable for interest, we find that they are all such acts of negligence or wrong administration as will disappoint the claimants on the assets. Ib. 1105; as if he applies the assets in payment of a claim, which he is not bound to satisfy. Ib. 1109. In these cases he is bound to account for the principal sum with interest. *164 A single case only is referred to in argument, in which no ® , ® 7 _ ~T was charged, Brunton vs. Pemberton, 12 Ves. 386. That was a casein which the executor set up a claim to the fund, believing he was entitled to it in his own right. The court was of opinion, that he would have been clearly entitled to it if he had set up his claim in the life time of the testator, but as he lost the principal sum, because of his negligence in asserting his right, they would not impose on him the further loss of the interest. Other cases of a similar character are to be found, but they stand so much on their own peculiar circumstances, that no general rule can be deduced from them. Massey vs. Banner, 4 Mad. 219: Byrchell vs. Bradford, 6 Mad. Rep. Courts of equity have retained a discretion to allow interest or not according to the circumstances of each case, yet it is not an arbitrary, but in a great degree a regulated discretion, controlled and governed by principles from which we cannot depart without introducing uncertainty and confusion into our system of equitable jurisprudence. The executor must be charged with interest on the amount from the time when he paid it out. But this sum was paid by him before the expiration of two years from the time he became executor, it was never in his hands as guardian, and he is only to be charged with the principal sum and simple interest from the time he paid it out.
We proceed next to “the exception of the defendant to the refusal of the clerk and master to give him credit for certain sums of money, amounting to nearly $1000, claimed to have been.retained by the executor to satisfy the same amount due to him as the executor of Richard Jones deceased. Peter Jones and Edward Ward became the joint executors of Richard Jonesj about the years 1803 or 1804. There is evidence in the record to show, that Peter Jones frequently received considerable sums of money, belonging to the estate of Richard Jones, and much testimony has been taken to show that ho could not have paid it to the legatees, or to the co-executor. A settlement was made by Col. Ward, one of the executors, with the estate of Richard Jones in 1810, and the estate is then found to be in his debt upwards of $600.- Peter Jones never made any settlement of his trans *165 actions as executors of said estate, so far as appears from this record, unless the settlement made byWard, the transactions of both executors. That the settlement of Ward' did include the transactions of both executors to some extent, is manifest, because we find in the account exhibited by him that the estate is charged with the expenses of Peter Jones in making two trips to Virginia, and with a small sum of money paid by Peter Jones. It is not shown in evidence, nor is it contended in argument, that Col. Ward paid the legatees of Richard Jones, deceased, the amount of money said to have been received by Peter Jones, at any time after the settlement, which he made in 1810; if*"Col. Ward ever paid it, it was-before that settlement. If he did pay money for Peter Jones to the legatees of Richard Jones, at any time before the death of Peter Jones, it became a debt due from Peter Jones to the defendant, as an individual, without any reference to their fiduciary character. It was a debt due from one to the other, without any regard to its origin. In February, 1811, a few days before the death ofPeter Jones, a settlement took place between him and the defendant Ward. It was made at the house of Jones, in the prospect of his speedy dissolution, and from the unambigous and comprehensive language used in the receipts which passed upon the occasion, it was probably intended to close for ever between the parties all accounts on this side of the grave. The' instrument signed by Ward says, “this day had a final settlement with Peter Jones, of all and every transaction of every kind and description, except his crops of cotton made in the years 1809 and 10, which are in my gin house, and find myself indebted to him in the sum of $150.” Stronger and more expressive language could scarcely be employed. It is insisted in argument, that this receipt was intended to embrace only the individual dealings and accounts of Peter Jones and Col. Ward, and was not intended to extend to their transactions as the representatives of Richard Jones deceased. If this be so, still the decree below is correct. If Col; Ward had previously paid the debt of Peter Jones to the legatees of Richard Jones, it was then a debt due to himself. If he had not paid it at the time, there is no evidence that he *166 has paid it since, and if it be a subsisting debt, it is due to legatees of Richard Jones; the defendant Ward, after this lapse of time, is not liable for it, unless he has received it. It is insisted further, that although the receipt upon its face may be comprehensive enough to embrace the matter of this exception, yet the receipt may be explained by parol evidence, and the testimony plainly shows the amount here contended for was not included. It is perhaps unnecessary to go into the doctrine, as to the admissibility of parol testimony to explain written instruments. The cases upon the subject are very numerous, and not in entire accordance with each other. Yet the current of modern decisions is^ that a receipt, whether under seal or not, may be explained by pa-rol testimony; receipts are regarded as an exception to the general rule, and testimony to explain them is admitted without hesitation, whenever they come in question. Tobey vs. Barber, 5 John.: 12 John. 531: Bowen vs. Bell, 20 John. 9 Cow. 270: 17 Mass. 257: 1 Peters C. C. 182: 3 H. & McHenry, 433: 1 J. J. Marshall, 387: 7 Monroe, 293: 7 Dow. & Ryland, 141: 3 Bar. & Adolphus, 833. But it is required, that the proof thus introduced to explain a receipt should be clear, strong and irrefragible, 6 Ves. 322, &c. The evidence relied on in this case, is the answer of the defendant. In considering the answer, we shall allow it the same weight which would be given to the testimony of any third person entirely disinterested and entirely worthy of credit. The character of Col. Ward for veracity and virtue, stands in no need of support from us, and his conduct in relation to this estate has been that of an honest and conscientious man. His testimony is relied on to limit and restrict the effect of an instrument couched in the broadest and most comprehensive terms, and made under very peculiar circumstances. The parties had been intimate and confidential friends, they had numerous transactions running through several years. One was sinking gradually, yet certainly to the grave when the settlement was made; its object seems to have been to close their worldly concerns, and to preclude any future or farther investigation, After this adjustment, Mr. Jones made his will, appointed Col. Ward his executor, confided very *167 unusual and extensive powers to him, but no where lets fall *■ an expression indicating a belief that the defendant had claim against him. 'He died under the conviction, that his accounts with Col. Ward were closed. But it is now said, this settlement was not general, but partial, that it did not embrace every transaction, but only some particulars, that it was not final, but liable to be ripped up and reinvestigated.
The cases require that a settlement thus solemnly made should be abridged in its effect and operation only by the clearest, the strongest, and most undoubted testimony. Is the testimony in this case of that character? The defendant in regard to another occurrence, which is charged to have transpired about the same time, says in his answer, “it has been a long time since; and respondent with sorrow admits he has a bad memory, and if the fact ever existed, he has not at this time any recollection of it.” The receipt bears date more than twenty years before the answer was filed. Not a single reason is assigned why this demand was not included in the general settlement. The same necessity existed for settling this, which existed in regard to the other items; it was possibly the most important in amount among them and its omission cannot be accounted for. With all these circumstances in support of the receipt, we must regard it as final and conclusive between the parties at its date. We come to this conclusion without any doubt as to the defendant’s belief of the truth and correctness of what he slates, yet the lapse of time, the decay of his memory, and the danger of opening settled accounts, without the most full and convincing proof induce us to let the matter rest as the parties themselves placed it, more than a quarter of a century ago.
We pass next to the exception of the complainants, as to the amount paid to Henry T. Jones, by the executor, and allowed to him in the decree. We think this exception is not well taken. The construction of the will as to the bequest to Henry T. Jones is not free from doubt; the instructions given by the legatees, then of full age, to the defendent Ward are not perspicuous; the compromise as understood and acted upon by the executor was advantageous to the children pf Peter Jones, and the payment was made in entire good *168 faith. A contingent general legacy will not bear interest until the contingency on winch it is to rest occurs, yet a specific legacy is considered as severed from the bulk of the testator’s property by the will, and interest is computed from thé testator’s death, although the time of enjoyment be postponed. 2 Rop. Leg. 188, 24. The hire of the negroes specifically bequeathed, properly belonged to H. T. Jones, and as he gave them up by the compromise, the other legatees are benefitted to that extent. The hire exceeds the interest of the genera] legacy, and we shall permit the credit allowed the executor to stand unaltered.
We proceed next to an examination of the exceptions as to the' rents. The account for rents commences in 1S18. William Hart married Catharine, the daughter of Peter Jones, in 1816, and Alex. Jones became of age in 1817. It is sought in this case to charge the defendant with the rents for the reason, that he is the testamentary guardian of the children of Peter Jones, and to charge him not only with the rents actually received, but with the estimated value of the land when it was not rented out Guardianship regularly ceases when the ward attains full age, or marries, if a female. The defendant therefore cannot be regarded as the guardian of these two persons, after the marriage of the one, and the majority of the other. He was not bound to rent out and to manage their portion of the land, tie is chargeable to them for any rents he may have received, but is not chargeable for any estimated rents after the periods above named. Bradley purchased the interest of Alex. Jones in 1822, in his part of the land. Alex. Jones died in 1823, leaving an infant son. No administration has been taken on his estate. Bradley would be entitled to any rents accruing since his purchase; any which Col. Ward previously received belonging to Alex. Jones, may be paid to his infant son Algernon S. Jones, after deducting a note for $146, with interest due from Alex. Jones to the defendant. Amelia married in 1828, and James C. Jones became of age in 1830, the same principle will govern in regard to their claims for rent, which was laid down in reference to the other two legatees. Until the division of the land took place in 1823, the defendant will be charged with-rent annnallv from 1817. *169 on half the quantity of cleared lands, exclusive of the widow’s J a * ' ’ t-. • dower, for Jas. C. Jones and Amelia. From that time . Will be charged with the rent of the cleared land allot-ed to each. The sixteen acres proved to be worthless will not be included in the account. When the land was rented out, he will be charged with the amount received, when not rented, with its estimated value, as it might have been rented by him. We see no good reason.to depart from the estimate fixed upon it in the account. When the defendant cultivated the land, it should be considered as rented by him. He should be allowed a credit of $36 75 cents for repairs to the plantation in 1820. The exception to the amount allowed for bailing cotton should be sustained. The defendant should have credit for the value of the linen and rope furnished for bagging, in addition to the allowance for pressing the cotton. From this allowance the weight of the rope and bale should be deducted at the price fcr which the cotton sold. The exception, as to the horses, is also sustained; the proof shows them to have been worth $80 each, and they should be credited at that price. The exception is also sustained to the striking off the interest from the account paid to Thomas Watson. The executor is held to account for interest on all sums received by him, and he should be allowed it on all sums paid out. The exceptions of the complainants, as to the allowance of the physicians bill for attendance on Claiborne, and the allowance to the defendant for attention to Dinah and Dick, and for the omission to charge hire for Claibore, in 1S25, are all overruled. The hire of Peter and Washington, to which exceptions have been filed on both sides, will be permitted to remain unchanged. The exception of the defendant to the rejection of William Hart’s note to him, offered as a credit to the executor in the account of Hart against him, is sustained. He is entitled to the credit. By consent of the counsel in argument, the exception, as to the note of Watkins, is sustained, and a credit for its amount allowed to the executor in the general account. A credit of $60 should also be allowed him for bis expenses in keeping Sylvia and her children, during the years 1825, 6, and 7S being $20 a year,
*170 The only remaining question relates to the mode of com» puting interest on the account. In England, in early times, the claim to interest met with but little countenance in the courts, but it has been growing gradually into favor. The first cases on the subject laid down the rule, that an executor lent out money at bis peril; be was liable if it was lost, and was entitled'to retain the profit as a kind of premium for the risk. This rule was adhered to with some fluctuation till the time of Lord Thurlow, when the present rule was established. In cases of negligence in executors, four per cent, only is charged; where misfeasance mingles in the transaction, the rate is raised to five per cent. Trustees of every kind are uniformly treated with great indulgence. It is said in a work of reputation, published only a dozen years ago, that in the-whole range of English decisions upon the various duties of executors, there is hut a solitary case giving compound interest. Hoffman’s Ch. Prac. 104. The courts in the United States have gone further, and have occasionally give» it, yet it is usually done under peculiar circumstances.
In this case the defendant is chargeable, not only as executor, but as guardian. The will confers powers upon him, Which he could' only exercise in the character of guardian. Independently of any statutory provisions, we might not be inclined to charge him with more than simple interest, but our statute requires guardians to account annually for interest on all sums in their hands. This is equivalent to compounding it, and we are not at liberty to depart from the statute. The mode of computing interest is correctly laid down in Jackson vs. The State of Connecticut, 1 Joh. Ch. Rep. 17. The payment is first to be applied in discharge of the interest due, and the balance in discharge of the principal, or what amounts to the same thing, where the payment is equal to the interest or exceeds it, the interest is calculated on the principal sum up to the time of payment, the payment is then deducted from the amount, and the balance stands as principal.
The directions then which will be given in regard to the computation of interest are, that the account of the executor with the estate will be balanced at the end of two years *171 from the time he became executor. Upon the sum then found to be in his hands he will be charged with interest till the of the year, the amount of his disbursements subsequent to the striking of the balance, will be deducted from this sum of principal and interest, and the balance will stand as the sum on which interest is to be calculated for the succeeding year. This principle will be pursued throughout the time he acted as guardian. Annual rests will be made, and the balance in hand, after deducting the disbursements of the defendant at the close of each year, will form the sum on which interest is to be calculated for the succeeding year. This method •will be followed as long as the defendant acted as the guardian of the legatees.
From the time he ceased to be guardian, either by the marriage or the majority of the legatee, he will be only charged with simple interest. The sum paid for Alexander Jones, mentioned in a former part of this opinion, will be excluded from that part of the account in which the defendant is charged with compound interest. It will stand alone at simple interest through the whole period.
The decree below will be modified and reversed, so far as it conflicts with this opinion; in all other respects it will be affirmed. The chancellor directed that each party should pay his own costs. We think this was right, and we direct that each party pay his own costs in this court and the court below.
Decree reversed.