# LEWIS W. THOMPSON

*v.*

# THOMAS CANDOR.

1. DEED—*delivery—what sufficient.* The delivery of a deed need not be made by the grantor himself, nor is it indispensable that it be made to the grantee. If made to any person for the grantee, and it is absolute and not conditional, his assent will be presumed.

2. Where a party proposes to make a donation of a tract of land to an educational institution, makes a deed thereto and hands it to one of the trustees who was superintending the erection of the buildings thereon, but imposes no conditions and gives no directions in reference to the deed, and subsequently dies, the presumption is that he intended to deliver the deed.

3. The deed, in such a case, takes effect from the time it is delivered to the trustee, and not when it is handed by him to the secretary of the institution; no act was to be done by the company, and they were in possession and engaged in erecting a building thereon when the deed was made. This was evidence of an intention to deliver and to accept, and the intention must control.

4. CORPORATION—*organization.* Where parties endeavor to organize a corporation for educational purposes, under the general law, adopt a name, elect trustees, and organize by electing a president and officers, and the trustees had acted for years in managing the property, had leased and mortgaged it, and expended a large sum of money in its improvement, these acts constitute it a corporate body *de facto,* and the regularity of its organization can not be questioned collaterally. Such irregularity can only be questioned by *quo warranto* or *scire facias.*

APPEAL from the Circuit Court of Mercer county.

Mr. C. J. BARTELSON, Mr. LEWIS W. THOMPSON, for the appellant.

Messrs. BASSETT & CORNELL, for the appellee.

Mr. JUSTICE THORNTON delivered the opinion of the Court:

This bill was filed for the cancellation of a deed.

Willits and Thompson were proprietors of the town of Aledo, and, for the purpose of the establishment of an institution of learning, to be called the "Mercer Collegiate Institute," proposed to donate the tract of land in controversy, and a large sum of money. On Willits and Thompson's addition to the town the land was designated as "Mercer Collegiate Institute." The institution was to be under the control and management of the Old School Presbyterian Church, and the deed was executed to the Mercer Collegiate Institute on the 13th of February, 1858, and placed in the hands of Thompson who was then one of the trustees. Willits died in March, 1858, and the deed was not delivered to the acting secretary of the board of trustees until in March of the following year.

In the meantime, and before the death of Willits, a part of the subscription in money had been paid, and the trustees had commenced and prosecuted the erection of a building. The

basement was nearly completed before his death, and the work was superintended by Thompson. Before the filing of the bill, in 1868, the brick work had been finished, the chapel plastered and heated, some other rooms completed, and a school kept in the building for a number of years. The chapel was used as a place of worship by the Presbyterian church, and one room was occupied by the janitor, and others by the teachers and their families.

In 1865 the building and grounds were leased to one Williams, and he obligated himself to complete the building, and to keep therein a school of such character as should be approved by the trustees, for at least nine months in each year; and at the commencement of the suit the property was in the possession of the lessee of the corporation.

In 1868 the heirs of Willits quit-claimed their interest in the land to appellant.

Appellant, whose bill was dismissed by the court below, contends :

*First*—That there was no delivery of the deed to the Mercer Collegiate Institute.

*Second*—That there was no organization or incorporation of the Institute, and therefore the deed was void for want of a grantee.

*Third*—That the property conveyed was a donation, and reverts on account of the acts of the grantee.

Delivery need not be made by the grantor himself, nor is it indispensably requisite that it be made to the grantee. If delivery be made to any person for the use of the grantee, and is absolute and not on condition, his assent is presumed from the fact that the deed is beneficial to him. *Bryan* v. *Wash*, 2 Gilm. 557.

The only question in this case is, as to the delivery by Willits. He and Thompson were the grantors, and the latter, at the time of the execution of the deed, and with the knowledge of Willits, was one of the acting trustees, and had been selected to superintend the erection of the college building.

Thompson testified that the deed came into his hands as one of the grantors ; but he further said, that there was no conversation between him and Willits about the deed, and he presumed that it was the understanding that he should deliver it.

If this delivery to Thompson was, in fact, no delivery, and not intended as such, why was it executed and left in the possession of the trustee who was the superintendent of the work, and interested in the perfection of the title ?  Why were no directions given, nor conditions mentioned, as to the delivery ? This omission raises a presumption in favor of delivery. *Verplank* v. *Sterry*, 12 Johns. 535.

From the evidence, it is an irresistible conclusion that the deed was executed and left in the hands of Thompson, the trustee, for the use and in behalf of the grantee ; and its operation was not postponed until the delivery to the secretary of the corporation, which was made by Thompson in the year 1859.  No act was to be done by the corporation to entitle it to a deed.  In fact, it had possession of the property in the year 1857, and, prior to the death of Willits, had completed the basement of the building ; and he had declared, in 1857, that he had given the land for the erection of the college building on it.  The conveyance was absolute, and without any power of revocation.  The grantee had possession, and continued the expenditure of money.

A controlling element in determining the delivery, as well as the acceptance of a deed, is, the intention of the parties. From all the facts and circumstances, it may be inferred that there was a delivery and acceptance.  *Matteson* v. *Cheek*, 23 Ill. 76 ; *Walker* v. *Walker*, 42 Ill. 311.

Did the corporation have such an existence that it could take, as grantee ?

In 1856 an attempt was made to organize a corporation under the general incorporation law.  A corporate name was selected, trustees were appointed, and an organization effected

by the election of a president and proper officers. The trustees thus appointed acted for years in the general management of the property, leased and mortgaged it, and expended a large amount of money.

Here, then, was a corporate body *de facto* which had been engaged in an undertaking, involving important interests. The regularity of its organization can not be questioned collaterally. Any alleged non-compliance with the law can only be inquired into by the writ of *quo warranto* or *scire facias*. *Rice* v. *R. I. & A. R. R. Co.* 21 Ill. 93 ; *Tarbell* v. *Page*, 24 Ill. 46 ; *Baker* v. *Backus, Adm'r*, 32 Ill. 79.

Hence, it is improper in this case to discuss the right of the grantee in the deed, to take ; or the power of the legislature to legalize the irregularities complained of.

The proof does not show an abandonment of the purpose of the grant. The trustees of the original grantee were appointed by the presbytery of the Old School Presbyterian Church, and the purchasers, at the sale under the decree foreclosing the mortgage, were the trustees of the Presbyterian church. According to the terms of the mortgage, the money secured thereby was for the use of the Mercer Collegiate Institute in the erection of a building ; and it is expressly required on the part of the lessee, to whom the premises were leased for fifteen years from 1865, that he should maintain a school of high character, and with such religious influence as the trustees should approve ; and that he should employ such teachers, and make suitable arrangements, so as to accommodate all the pupils who desire to attend, to the full capacity of the building, or forfeit all rights under the lease.

School has actually been kept in the building from the fall of 1865 to the summer of 1867, from the fall of 1868 until the spring of 1869, and from September, 1869, to June, 1870.

The deed is absolute, and contains no provision for reversion. The proof does not show a failure or perversion of the trust, and the decree, dismissing the bill, is affirmed.

*Decree affirmed.*