## JOHN MUNN *et al.*

*v.*

## WALTER S. BURGES *et al.*

1. TRUSTEE—*presumed to perform his duty.* The presumption is, that parties charged with a trust perform their duty, until the contrary appears; and when an act is susceptible of two opposite constructions, one consistent with innocence and fidelity to duty, and the other the reverse, the law presumes in favor of innocence and fidelity to duty.

2. SAME—*right to deal with trust property for his own benefit.* A trustee is only prohibited from dealing with the trust property for his own benefit so long as the trust continues, and as soon as the trust ceases, he occupies the same relation to the trust property that a stranger to the trust does, and, acting in good faith, may become the owner of the property, by purchase or otherwise.

3. SAME—*duties under a mortgage with power of sale.* When the mortgagee, in a mortgage authorizing a sale and conveyance by him, makes such sale in compliance with the terms of the mortgage, and conveys the premises to the purchaser in good faith, and without any previous arrangement between him and such purchaser for a reconveyance, his duties as trustee, in regard to the mortgaged property, are ended, and he is at liberty to deal with the purchaser in relation to the property in good faith, the same as if such purchaser had derived title through some other source.

4. SAME—*title acquired under sale made by him—whether void or merely voidable.* If the mortgagee, with power of sale, sells and conveys under the mortgage to another, with the understanding that the purchaser is to convey to him, and the purchaser does so convey, the title thus acquired will not be absolutely void, but voidable only; and in such case, if steps

are not taken by the owners of the equity of redemption, upon knowledge of the fact coming to them, ratification of the sale will be implied.

5. SALE UNDER A MORTGAGE, WITH POWER TO SELL AND CONVEY—*whether it can be made in the absence of the mortgagee.* When a sale under a mortgage is conducted by the attorney of the mortgagee, in his absence, and the mortgagee, in whom the legal title as well as power of sale, coupled with an interest, is vested by the mortgage, subsequently ratifies the sale by making the necessary deed for the property, the mere fact that the sale is conducted by the attorney in the absence of the mortgagee will not render the title derived therefrom absolutely void.

6. The mortgagee may convey to the purchaser in his own name, when the mortgage expressly authorizes him to do so.

7. NOTICE—*recitals in a deed of facts which may or may not amount to a fraud.* The recitals in a deed, of a fact which may or may not, according to circumstances, amount to a fraud, will not affect a purchaser for a valuable consideration, denying actual notice of the fraud, nor will circumstances amounting to a mere suspicion be deemed notice.

8. SAME—*possession of land—notice.* The possession of land is notice of the extent and character of the claim of those holding possession, and nothing more.

9. In a suit between two parties in relation to the title to land in the possession of a third party, who claims adversely to both of them, such adverse possession is notice of nothing more than the extent and character of the claim of such adverse occupant.

10. LACHES. In 1856 the complainant executed to one of the defendants a mortgage, to secure the payment of certain promissory notes, the last of which became due in four years; the mortgage contained a power of sale. Default was made in the payment of the last note, and the mortgagee gave notice and sold, in compliance with the mortgage, in 1862. A short time after the deed was executed to the purchaser, he reconveyed to the mortgagee, who, from that time forth, claimed to own the property, and sold portions of it at different times to other parties, who have held, occupied and improved it—of all which complainant had notice. In 1869 the complainant filed his bill, asking to be allowed to redeem from the mortgage, on the ground that the sale by the mortgagee to the purchaser, and the reconveyance by the purchaser to the mortgagee, were made in pursuance of an agreement entered into between the mortgagee and purchaser before the sale; that such conveyances were to be so made with the view of fraudulently depriving the complainant of his equity of redemption, and that the same were for that reason void: *Held,* that without reference to any other questions involved in the case, the complainant had been guilty of such *laches,* in asserting whatever rights he may have had in the property, as must, of itself, preclude his right to recover.

APPEAL from the Superior Court of Cook county; the Hon. JOSEPH E. GARY, Judge, presiding.

Mr. F. Q. BALL, Mr. J. S. PAGE, Messrs. SLEEPER & WHITON, and Messrs. GOUDY & CHANDLER, for the appellants.

Mr. JOHN BORDEN, for the appellees.

Mr. JUSTICE SCHOLFIELD delivered the opinion of the Court:

This is an appeal from a decree of the Superior Court of Cook county, allowing the complainants to redeem from a certain mortgage.

The substance of the bill is, that on the 30th day of May, 1856, Burges, one of the complainants, executed a mortgage to Munn, one of the defendants, on lots 16 and 28, of the subdivision of the south-west quarter of section 12, township 39 north, range 13 east, in Cook county, to secure the payment of $19,000, evidenced by six promissory notes : one for $1100, due in thirty days, one for $1100, due in sixty days, and four others for $4200 each, due, respectively, in one, two, three and four years from date; that all of the notes were paid except the note last due, and a small balance on the one due three years from date; that on December 1, 1858, Burges sold and conveyed the undivided half of his equity of redemption to the complainant Payton; that in 1862, defendants Munn, Fitch and Page confederated together and agreed to defraud complainants of their equity of redemption, by pretending the property was sold under the terms of the mortgage, and bought·by Fitch, who was to receive a deed therefor, in his own name, and subsequently reconvey to Munn ; that, in pursuance of such confederation and agreement, they did pretend the property was sold on the 10th day of July, 1862, by Munn to Fitch ; that Munn, on the 22d day of September, 1862, executed and delivered to Fitch a deed for the property, bearing date August 8, 1862, falsely

pretending and reciting, that, for default of payment of the balance due on the mortgage, he had, on the 10th day of July, 1862, made sale of the property to Fitch, for the sum of $5000, bid for the same and paid to him by Fitch, and conveying the property to Fitch, and thereby purporting and pretending to cut off the equity of redemption therein of complainants, and vest in Fitch an absolute title; that Fitch, at the same time, executed and delivered to Munn his quitclaim deed, bearing date September 8, 1862, reconveying the property to him, for the consideration, as expressed in the deed, of one dollar and other valuable considerations; that both deeds were taken to the recorder's office in Cook county, and there filed for record by Page, and, after they were recorded, they were taken out of the office by Fitch, and either retained by him or sent to Munn.  It is denied that any sale was, in fact, made of the property, and is averred that the deeds were executed and delivered in pursuance of the fraudulent agreement to defraud complainants of their equity of redemption.  It is claimed that, after the execution and delivery of the deeds, the title remained in Munn as mortgagee simply, and that complainants were entitled to redeem.

Subsequent purchasers of the property are made parties defendant with Munn, Fitch and Page, and charged with notice of the real character, as claimed, of Munn's title.

The prayer is, that complainants be allowed to redeem from the mortgage, and, in case redemption is not allowed, that Munn, Fitch, Page and Watkins, or some one or more of them, pay to complainants the present value of the property, less what would be required to redeem, etc.

By an amendment to the bill, made subsequent to filing, it is alleged that complainants have resided without the State of Illinois ever since, as well as at the time of the execution of the mortgage, and for the greater part of the time in the State of Rhode Island; that Burges has not been in Chicago since long prior to 1862, and that Payton was not there, until within a year prior to the filing of the bill, at any time after

1861 ; that after the year 1857, and up to and during the year 1862, times were hard, and it was difficult to raise money, and although Munn had pressed them upon the mortgage indebtedness, they had not found themselves able to pay the same ; that Payton, upon whom devolved the duty of paying one-half of the indebtedness, failed, and conveyed away his interest in the property, by way of mortgage, and also by assignment for the benefit of his creditors ; that neither of the complainants was advised of the deeds from Munn to Fitch and Fitch to Munn, until within less than a year prior to filing the bill, and were not earlier advised that an invalid or pretended sale of the mortgaged property had been made or was claimed to be made, and that suit was brought as soon thereafter as Payton could remove the incumbrances from his interest. Complainants dismiss the bill as to Fitch, Page, Watkins and Abbers; and the amendment concludes by repeating that no sale has been made of the mortgaged property whereby complainants' equitable interest or right of redemption was cut off, and prays as in the original bill.

A further amendment was made, but it is not necessary to state its substance, as it in nowise affects the merits of the case, as we understand them.

Answers were duly filed, putting in issue the material allegations of the bill and amendments, claiming that the present owners had purchased the property in good faith, without notice of the complainants' alleged equities, and insisting that complainants were guilty of *laches* in not sooner prosecuting their claim, and that they are barred by lapse of time, and also claiming the benefits of the several statutes of limitations.

On hearing, the court found that complainants were entitled to redeem, and decreed that they be allowed to do so, upon paying the amount due on the mortgage, together with the amount paid for taxes, improvements, etc., after deducting rents.

Before proceeding to notice the principal questions which have been discussed by the respective counsel, it may be well to observe that the evidence preserved in the record wholly fails to sustain the charge made in the bill, of conspiracy and confederation between Munn, Fitch and Page, to defraud complainants of their equity of redemption; and this is tacitly conceded by complainants, by their dismissal of the bill as to Fitch and Page.

It is claimed by defendants, that the property was sold in good faith on the 10th of July, 1862, in strict conformity with the power contained in the mortgage; that Fitch bid it off in good faith; that the deed from Munn to Fitch was executed and delivered in like good faith, and that the agreement whereby Fitch consented to reconvey the property to Munn was subsequent to the sale, and, therefore, in nowise affected its validity.

It is not claimed by the complainants that proper notice of the sale was not given, or that the sum bid by Fitch was grossly inadequate to the then value of the property. His bid was $5000, and it is conceded that the full cash value of the property, at the time, did not exceed $6000. Nor is it claimed that there was any combination to prevent bidding at the sale, or any other fraudulent devices or practices resorted to for the purpose of preventing or discouraging those who might have desired to become purchasers from attending the sale and bidding on the property, or for the purpose of depreciating the value of the property.

The objection urged is, there was no sale in fact, because: first, it was never consummated between the parties, and secondly, Munn was not present at the time of the sale, and the power delegated to him by the mortgage could not be exercised by an attorney in his absence.

The sale was conducted by the firm of Rucker & Page, respectable attorneys and solicitors, then practicing in Chicago, of whom Rucker seems to have given the chief attention to the business. The notice given of the sale was more exten-

sive than required by the power, and, as has already been observed, no objection is taken to the manner in which the sale was conducted, or that the amount bid was grossly inadequate to the value of .the property.    Munn resided at Utica, New York, and seems to have acted under the advice and direction of his legal counsel at that place, (one John Coye) by whom the mortgage and notes were sent to Rucker & Page, and under whose direction the sale was made.    After the sale was made, it was reported by Rucker & Page to Coye, and by him to Munn.    Munn approved and ratified the sale, and executed the necessary deed to Fitch, which was, by Coye, transmitted to Chicago.

Munn's evidence is positive that, at and prior to the execution of the deed by him to Fitch, there was no agreement or understanding that he was to have the property.    He says : "It is not true that it was understood all through said transaction, and especially at the time of the sale of the property under the mortgage, or at the time of the execution by me to Fitch of my deed therefor, that he was to take and hold the property for me, and not for himself."

The deed, although dated on the 8th of August, 1862, was acknowledged by Munn, at Utica, on the 2d of September, 1862 ; and the deed from Fitch to Munn was executed by Fitch, at Chicago, on the 16th of September, 1862, and both deeds were recorded on that day in the proper office in Cook county.

Fitch, in giving his evidence, is equally as positive as Munn that there was no agreement 'or understanding between himself and Munn, or his attorneys, that he should bid the property off for Munn.    His version is, that his bid was made · in good faith ;. that the amount bid was all he then considered the property worth,; .that after the deed from Munn to him was sent to Chicago, he learned there was some dissatisfaction by Munn's friends, on account of the amount of his bid ; that he was requested to increase the amount, but declined to do so ; that Rucker, who had conducted the sale, was his brother-

in-law, and to avoid bringing censure upon him, and at his request, after the deed was brought to him, he concluded to reconvey the property to Munn.

If this be true (and there is no evidence contradicting it), it is plain that when Fitch concluded to reconvey to Munn, he was invested, by Munn's deed, with whatever title it was in Munn's power to convey under that sale, and his act of reconveying to Munn was purely voluntary, and not in consequence of any prior agreement or understanding between them. When Munn executed the deed to Fitch, and placed it beyond his control by causing it to be transmitted to Chicago for Fitch, the delivery was complete, and his duties in regard to the property as trustee were ended. . *Thompson* v. *Candor*, 60 Ill. 244.

From that time forth, Munn and Fitch were at perfect liberty to deal with each other in good faith, in reference to this property, with the same freedom as if Fitch had become invested with the title through some other source. Jealous as courts of equity are in watching over the conduct of the trustee in connection with the objects of his trust, he is only forbidden by them from dealing with the trust property for his own benefit so long as the trust continues. The moment it ceases, he occupies precisely the same relation towards it that strangers to the trust do, and, acting in good faith, he may then become its owner, by purchase or otherwise. *Wortman* v. *Skinner*, 1 Beasley (N. J.) 371; *Bœhler* v. *McBride*, 48 Mo. 507.

But even if Munn did become the purchaser at the sale, through the aid of Fitch, to whom he conveyed, and from whom he received his title, "such title would not be absolutely void, but voidable only, and if immediate steps were not taken by Burges and Payton, on their obtaining a knowledge of the sale, to set it aside, a ratification by them will be implied. *Hamilton* v. *Lubukee et al.* 51 Ill. 416.

We might content ourselves, so far as the second objection urged against the validity of the sale is concerned, by refer-

ring to the fact that it is not charged in the bill. There is no allegation there that Munn was not present at the sale, and that it was conducted by an attorney, in his absence; nor is there an allegation of equivalent import. It has been repeatedly held by this court that the complainant must recover, if at all, on the case made by his bill. *Morgan* v. *Smith*, 11 Ill. 200; *White* v. *Morrison et al.* 21 id. 17; *McKay* v. *Bissett et al.* 5 Gilm. 499.

But, assuming that the question may be regarded as properly before us, it is evident that the mere fact that the sale was conducted by an attorney, in his absence, did not, under the circumstances, render the title derived therefrom absolutely void. Munn subsequently approved the sale, and ratified it by making the necessary deed to the property. He held a power, coupled with an interest, and the legal title was vested in him by the mortgage. The objection that he could not convey in his own name, is not tenable. The power expressly authorized him to do so, and in this the case is entirely different from that of *Speer* v. *Hadduck*, 31 Ill. 439, cited by counsel for complainants.

The language of the power is: "But it is expressly provided and agreed that, if default be made, etc., * * * the said party of the second part, his heirs, executors, administrators or assigns, after publishing notice, etc., * * * may sell the said premises and all right and equity of redemption of the said party of the first part, etc.; * * * and the said party of the first part hereby specially covenants and agrees to and with the said party of the second part, to waive his right of equity of redemption, and further agrees that he will neither assert nor claim any such right on a sale of the property mentioned herein, by virtue of this mortgage; and the said party of the second part to make, execute and deliver to the purchaser or purchasers thereof a deed for the premises so sold."

At most, the irregularity complained of in the sale only rendered the title voidable, and an application to set it aside,

for that cause, should have been ·made within a reasonable time, and before the rights of innocent third parties intervened.

The defendants, who are owners of the property, are remote purchasers from Munn, and they deny all knowledge of the irregularities in the sale, of which complaint is made, and insist that they purchased in good faith, without notice of the equities of complainants. Complainants seek to charge them with such notice, first, by the record of the deeds from Munn to Fitch and Fitch to Munn, and secondly, by the possession of Standart and Hughes, at the time they purchased, who occupied portions of the premises.

The only notice appearing from the record of the deeds which is claimed to be of any importance, is, that the deed from Munn to Fitch. bears date some days subsequent to the day of sale; that it was not acknowledged on the day it bears date; that both deeds were recorded on the day of the date of the deed from Fitch to Munn; that they were recorded consecutively upon the record, and that the deed from Fitch to Munn is a quit-claim, and purports to have been executed for the consideration of $1 and other valuable considerations.

This record likewise shows the mortgage from Burges to Munn, and in the record of the deed from Munn to Fitch it is shown that the terms of the power in the mortgage were, in all respects, complied with,·in conducting and carrying out the sale. It shows that the sale was conducted by Munn, and there is nothing recited from which it can be inferred that this was not true. Fitch appears to have purchased as a bidder at the sale, and the property is conveyed to him. The deed from Fitch to Munn is dated some days subsequent to that of Munn to Fitch, when there was no legal impediment to such conveyance on account of Munn's former duty as trustee of the property, provided the conveyance was made in good faith, and not in pursuance of an agreement between them, made at or prior to the mortgage sale. A quit-claim deed conveys title as effectually as one with covenants of

warranty; and since this title was derived through Munn, it is not perceived that it could be regarded as a circumstance tending to arouse even a strong suspicion that, in receiving a conveyance back, he did not exact covenants of warranty. The amount of consideration expressed in a deed is not conclusive evidence of what the consideration really was, and it does not at all affect the validity of the deed; and whether a deed shall be recorded at all, is a matter of no consequence, save as to the rights of subsequent purchasers or incumbrancers without notice. Nothing appearing on the face of the records of deeds, is, therefore, necessarily inconsistent with a regular sale under the mortgage and good faith and honesty in the transaction between Munn and Fitch. We say necessarily inconsistent, because it is undoubtedly true that these records might be just as they are, and yet the sale have been much more objectionable than it is claimed to have been, and precisely the same might also be true when not the slightest criticism could be urged against the records in any respect. The presumption is, that persons charged with a trust, perform their duty, until the contrary appears; and when an act is equally susceptible of two opposite constructions—one consistent with innocence and fidelity to duty, and the other the reverse—common charity and the law alike require that we shall presume in favor of innocence and fidelity to duty.

The rule in reference to such notice, as given by Sugden, is, "the recital in a deed of a fact, which may or may not, according to circumstances, be held in a court of equity to amount to a fraud, will not affect a purchaser for valuable consideration denying actual notice of the fraud; nor will circumstances amounting to a mere suspicion of fraud be deemed notice." 2 Sugden on Vendors (8 Am. Ed.) 568, sec. 59.

So far as the actual notice, resulting from the possession of Standart and Hughes, is concerned, it is sufficient to say they claimed under one Selever, whose claim was adverse to

that of the complainants as well as the defendants. Their possession was notice of the extent and character of their claim, but of nothing more. The defendant owners, before purchasing, had that claim investigated by eminent counsel, and were assured it was groundless; and so it seems to have proved on being tested in the courts.

We feel, therefore, constrained to hold that the defendants, owning the property, at the commencement of the suit, were purchasers in good faith, without notice, actual or constructive, of the equities claimed by the complainants. Being such, it would necessarily follow that they can not be held responsible for the irregularities charged, and their titles should be protected. *Hamilton* v. *Lubukee, supra; Cassell* v. *Ross,* 33 Ill. 244.

Moreover, complainants have been guilty of such *laches* in asserting whatever rights they may have had in the property, as must, of itself, consistently with previous decisions of this court, preclude their right to recover in the present suit. The mortgage was given to secure the payment of purchase money for the property. There is no question made as to the amount due on the mortgage at the time of the sale under it, and it is conceded that complainants were then unable to make payment. Prior to the sale, Burges wrote the following letter to Coye, Munn's attorney, in relation to the matter:

"PROVIDENCE, Oct. 5, 1861.

J. G. COYE, ESQ.:

*My Dear Sir*—Excuse me for not replying sooner to your letters of the 13th and 30th ult. The fact is, I have been endeavoring to interest some friends and financiers in the matter, so far, at least, as to enable me to comply with your reasonable proposition. I could not, until to-day, get a decisive answer from the forlorn hope, and then, sad to say, an unfavorable one. I do not see anything that can possibly be done to relieve me from the difficulty I am in, with regard to this property. You must, therefore, pursue the course that you consider best for the interest of Mr. Munn. It is of no use to make propositions which look only to delay and for

better times, and it seems to be out of my power to accept any made by yourself or Mr. M. Of course, our public disasters have produced with me this state of things, assisted by the bad faith and broken pledges of the man Payton, who was bound to share in these payments, or to bear a portion of my loss. I don't believe, from what I have heard of Chicago affairs, and from what I know of mortgages here, that the land in question will sell for any more than what is due to your client. Still, if it should, I will be greatly obliged to you for an account and remittance. Please present my thanks to Mr. Munn for his past favors, and my best wishes for his future happiness and prosperity. For your considerate kindness in presenting this claim, I am very much obliged, and am

Very truly yours,

W. S. BURGES."

The sale was not made until the 10th day of July following. Both Burges and Payton admit they had notice when the sale was to take place. Burges says: "I was aware of Mr. Munn's intention to sell, and I believe I had direct notice from some one. I do not remember from whom. It may have been by an advertisement in a newspaper sent to me. I can not say how I knew it, but am very confident I did know it." Payton says: "I was informed by Mr. Burges that the sale would be made July 10, 1862, positively, and there was no doubt but what it had been sold." Neither of the parties deemed it necessary to be present at the sale, and from that time until in 1868, when Payton visited Chicago, it is clear they had abandoned all idea of attempting to regain possession of the property. Burges says: "I made no inquiries, after the sale, except to ascertain for what price it was sold, and paid no further attention to it, believing everything had been done correctly, and I was irrevocably foreclosed."

Fitch conveyed to Munn September 16, 1862, and Munn retained the title thus vested in him until the 16th of July, 1866, when he sold and conveyed the property to Watkins

for $17,000.   Watkins, on the 13th of December, 1867, sold
and conveyed lot 16 to Taylor, for $10,000 or $11,000, and
Taylor, on the same day, sold and conveyed that block to
Rawson for $800 more than he gave for it.   In April, 1868,
Watkins sold and conveyed block 28 to Larned and others
for $15,000.   Subsequently, different portions of the property
were sold and conveyed in small quantities to different pur-
chasers, at still higher prices, among whom was the defendant,
Matthews, who bought of Rawson one· acre in lot 16, for
$2500, in January, 1868, and erected a house upon it of the
value of $3500.

The deeds from Munn to Fitch and Fitch to Munn were
placed on record on the 16th of September, 1862, and they
contained notice to the public, from that time forth, that
Munn claimed to own the property under the deed from Fitch.
Complainants could then have as readily ascertained the facts,
so far as we are able to perceive, upon which they were in-
duced to bring this suit, as in 1869.   But then the property
was worth but little, if anything, more than the amount due
on the mortgage, while, in 1869, when suit was commenced,
it was worth about $50,000, and in 1872, when the deposi-
tions were taken, it was estimated to be worth $200,000.   This
great and rapid rise in the value of the property is attributed
by the witnesses to the extension of the city limits in that
direction, and the opening and improving of streets, and the
location of public parks in its vicinity.   Whatever burdens
may have been imposed on the property, by way of taxation,
for these or other purposes, have not been borne by the com-
plainants, but by Munn and those claiming under him.
Where real estate is bought for speculative purposes, as this
would seem to have been, by complainants, and from its pecu-
liar location, or from other causes, it is liable to sudden and
great fluctuations in value, promptness in making payment,
or in the assertion of legal or equitable rights, is far more
important than it is where the property is bought for actual

use by the purchaser, and the lapse of time does not sensibly affect its value.

Complainants here had the right, assuming the sale under the mortgage to have been irregular, to elect whether they would avoid or ratify the sale, but this they were bound to determine within a reasonable time. It was not consistent with the principles of equity, that they should wait for seven years, and speculate on the chances of the increase or depreciation in the value of the property, before making their election. Consistently with previous decisions of this court, we must hold, under the evidence, complainants have been guilty of such *laches* as precludes all right of recovery in the present suit. *Cox* v. *Montgomery*, 36 Ill. 394; *Winchell* v. *Edwards*, 57 id. 45; *Shaw* v. *Beach*, id. 17; *Hamilton* v. *Lubukee, supra.; Burr* v. *Borden et al.* 61 Ill. 389; *Dempster* v. *West*, 69 id. 613.

The decree of the court below is reversed, and the cause remanded with directions to that court to dismiss the bill of complaint.

*Decree reversed.*