BUCKSPORT & BANGOR RAILROAD COMPANY *vs.* JOSEPH L. BUCK.

Hancock. Decided March 1, 1878.

*Corporation.*

A valid subscription to the capital stock of an incorporated company is not rendered invalid by a change of its corporate name in accordance with a legislative act; and the company may sue for and recover the subscription under its new name.

A subscriber to stock of an incorporated company, who as an officer participates in the calling of a meeting for its permanent (not preliminary) organization, and is therein chosen a director and acts as such, thereby waives his right to avoid payment on the ground of the insufficiency of the notice of the call for the meeting.

A conditional subscription to stock of an incorporated railroad, *Held* valid and to constitute a part of the amount of the subscriptions required as a condition precedent to bind other subscribers.

ON REPORT.

ASSUMPSIT, on subscription to stock.

Plea, never promised, with a brief statement that the plaintiff company was never legally organized under its charter.

The facts are mostly stated in the opinion of Appleton, C. J., 65 Maine, 536.

The acts of 1870, c. 395, provide at the close of § 2, "and any seven of the persons named in the first section of this act are hereby authorized to call the first meeting of said corporation for

the choice of directors and organization by giving notice, in the newspapers, published as before named, of the time and place and purposes of such meeting, at least fourteen days before the time mentioned in such notice."

The meeting for organization under the charter was held, after seasonable notice, April 28, 1870. In the year following, after $100,000 were subscribed, the amount required as a condition precedent to bind the other subscribers to the stock, a meeting was called and held October 10, under a notice dated October 5, 1871, published in the papers October 5 and 7, at which the defendant voted and was elected a director ; and he afterwards acted as such.

*E. Hale & L. A. Emery,* for the plaintiffs.

*J. Baker & W. H. McCrillis,* for the defendant.

DICKERSON, J. When this case was presented to us before, (65 Maine, 536) we decided that the defendant's liability depended upon the terms of his agreement ; that his promise became binding when a subscription of one hundred thousand dollars, by good and responsible parties, had been obtained; and, *per consequence,* that the $300,000 clause in the defendant's subscription was a condition subsequent.

As it does not clearly appear from the reporter's abstract of the case, or the opinion of the court, that the legality of the organization of the corporation, or its right to maintain an action in the name of the Bucksport & Bangor R. R. Company, or the validity of a sufficient amount of the subscriptions to the capital stock of the corporation to make up the sum of one hundred thousand dollars, was then presented, considered and decided, these questions may properly be regarded as open for our determination upon the evidence as now presented. The remark in the opinion of the court that the sum of one hundred thousand dollars had been subscribed, applied to the case as then presented, and not to its present presentation.

No objection is made by the defendant to the legality of the meeting of the corporators, held April 28, 1870. The evidence shows that that meeting was notified as required by the charter;

that the charter was then accepted by the corporators, and that an organization was effected by the choice of a chairman, secretary and a board of seven directors, of which the defendant was one. The defendant was present and participated in that meeting. At a meeting of the directors, on September 13, 1870, the defendant was elected president, and chosen a member of the committee to draft a code of by-laws.

At a meeting of the directors, on September 19, 1871,—present the defendant, as president of the board—the subscription of the defendant and others to the capital stock of the corporation was accepted, subscription books were ordered to be opened from the second to the eighth of October, 1871, and the clerk was instructed to call a meeting of the subscribers to the capital stock of the company, on the tenth day of October following. The notice of that meeting was given according to the vote of the directors, and it was held at the time appointed; fourteen hundred and twelve shares were represented and a board of directors was elected, including the defendant who voted for directors, indorsing the following upon his ballot: "Joseph L. Buck, one hundred and fifty shares." The defendant continued to act as a director of the company for nearly a year after the meeting of the stockholders, held October 10, 1871.

The objection to the legality of the meeting of the subscribers to the capital stock of the company, on October 10, 1871, is based upon the alleged insufficiency of the notice. It is contended that the charter, § 2, requires "at least fourteen days' notice" of such a meeting for the choice of directors, whereas only five days' notice was actually given. Waiving a construction of that clause of the second section of the charter, in view of the foregoing evidence in the case, we think that this objection is not open to the defendant.

The charter had been duly accepted by the corporators, and the company was duly organized, by the choice of directors and other officers, at the meeting of the corporation, on April 28, 1870. All the subsequent proceedings of the directors, then chosen, were had under color of the charter, and in furtherance of the enterprise it contemplated. If there was any defect in the

notice of the meeting of the subscribers to the capital stock, on October 10, 1871, the position of the defendant, as president of the board of directors, who ordered the meeting to be called, and fixed the time and place for holding it, devolves upon him no inconsiderable share of the responsibility for such error. By the acts of the defendant as one of the corporators and directors of the company, by his voting to accept his own subscription, by participating in the call of the alleged illegal meeting of the subscribers to the capital stock of the company, on October 10, 1871; by casting his ballot as a stockholder at that meeting, and accepting the office of director of the company to which he was then elected, he waived his right to object to the legality of the organization of the company at the meeting of October 10, 1871, on account of the defect in the notice, if any there was, by which it was called. By his acts he assented to the notice of that meeting, and recognized the company as existing and proceeding regularly; he, in effect, said, " I am content;" and now that the enterprise which he contributed so largely to promote by his liberal promise of material aid, and his success in inducing others actually to invest their money therein, has proved a failure, he cannot, upon such a technical objection, go back on his pledges and record made when he was hopeful of a successful issue. *Ossipee Man. Co.* v. *Canney*, 54 N. H. 295. *Thompson* v. *Candor*, 60 Ill. 244. *Ruggles* v. *Brock*, 13 N. Y., S. Ct. 164. *Swartwout* v. *Michigan Air Line*, 24 Mich. 389. *Chubb* v. *Upton*, 95 U. S. 665. *Buffalo & Allegany* v. *Cary*, 26 N. Y. 75. *Meth. Church* v. *Pickett*, 19 N. Y. 482, 485.

It did not require the assent of the subscribers to the capital stock of the company to authorize the legislature to change its name; the statute confers that right upon the legislature without such assent; and the defendant's agreement was made subject to that legislative prerogative. The clause in the defendant's agreement, "such alterations, if any, to be in accordance with a vote of a majority of the board of directors, legally chosen by the stockholders of the road," contains some of the requisites of a condition precedent; it is not such in terms; it need not be performed before the promise of the corporation ; nor is it the moving cause

or consideration of the contract. *Mill Dam Foundry* v. *Hovey*, 21 Pick. 417, 438. If that clause is anything more than an expression of the wishes of the defendant, or directory to the board of directors, it is a condition subsequent and constitutes no bar to the maintenance of this action in the name of the present plaintiffs, who compose the identical company, though under a different name, that the defendant originally contracted with.

A third ground of objection to the defendant's liability is that the subscription of the town of Bucksport cannot legally be included in the amount of capital stock subscribed for prior to the meeting of the stockholders, on October 10, 1871, because the vote of the town authorizing that subscription was not warranted by the call in the warrant. It is conceded that without that subscription the precedent condition of obtaining a subscription of one hundred thousand dollars to the capital stock had not then been complied with.

The article in the warrant was as follows: "To see if the town will vote to take stock in the Penobscot & Union River Railroad Company, and, if so, how much; and to provide for raising the money to pay for the same." The vote of the town upon the first clause of that article was as follows: "That the selectmen be and are hereby authorized and instructed to subscribe sixty-five thousand dollars to the capital stock of the Penobscot & Union River R. R. Co., upon the same conditions as private subscriptions to said stock have been or may hereafter be made."

R. S., c. 3, § 5, as repeatedly construed by this court, while in terms requiring the warrant to specify in distinct articles the business to be acted upon at a town-meeting, leaves a large discretion to be exercised by the voters, when assembled, as to the disposition they may make of the matter submitted for their action. The statute requires that the articles in the warrant shall distinctly apprise the voters of the subject to be considered, without prescribing any rule for their action upon it. It is in general competent for the town to adopt or reject the proposition submitted, wholly or in part, or to adopt it with specific limitations or conditions. The particular subject to be considered at the town-

meeting in this case was the taking of stock in the Penobscot & Union River Railroad Company. Whether or not to take any of that stock, or, if any, how much, and whether absolutely or conditionally, were questions submitted to the discretion and decision of the voters attending the meeting. They voted to subscribe for a specified amount of the capital stock of the company, upon conditions deemed by them reasonable and wise; and, as they are free from illegality, the subscription must be regarded as valid. The preliminary subscription of one hundred thousand dollars, therefore, was obtained prior to the meeting of the stockholders on October 10, 1871, and, by the terms of the defendant's subscription, it was then competent for the stockholders to choose a board of directors and other officers. The subsequent proceedings of the company and its directors was in accordance with the requirements of the charter; and the plaintiffs, having thus performed the conditions of their contract with the defendant, are entitled to enforce the fulfillment of the defendant's promise to them.

The objection that Edward Swazey was not the legal clerk of the company is not tenable. He was at least clerk *de facto*, and hence his acts would be valid. But he was, in fact, clerk *de jure*, having been duly chosen and qualified as such, September 19, 1871, and by the charter the clerk holds over until a successor is chosen and qualified. So, also, it is obvious that the defendant's promise was to the company and not to its treasurer, and that the action is properly brought in the name of the promisee. The other questions discussed by the learned counsel for the defendant are *res adjudicata*.

> *Judgment for the plaintiffs for the sum of $15,000, and interest upon the respective assessments from the demand of the treasurer.*

APPLETON, C. J., DANFORTH, VIRGIN and PETERS, JJ., concurred.

LIBBEY, J., having been of counsel, did not sit.