JOHN EVANS CORNELL

V.

GEORGE NEWKIRK ET AL.

*Mortgages—Illegal Judicial Sale—Bill to Set Aside—Laches—Acquiescence—Practice.*

1. The principle embraced in the maxim *vigilantibus non dormientibus aequitas subvenit*, may be invoked whenever a court of equity is asked to afford relief, and when so invoked, it is for the court to determine whether equity requires that the relief sought should be given.

2. The party who challenges a sale on account of irregularities that may have intervened, must be diligent in discovering that which he alleges will avoid the sale, and diligent in his application for relief.

3. A sale and the execution of a conveyance thereunder not in compliance with a statute relating to foreclosures, will not be considered void unless the same expressly declares that sales made without compliance with its provisions shall be void.

4. In the case presented, this court holds that the illegal mortgage sale was one which might have been set aside had application been made in proper time, but that the circumstances show inexcusable *laches* on the part of the mortgagor, and furthermore that he acquiesced therein, and that the equity of complainant herein, who had paid nothing, and who before he took a conveyance was informed by the mortgagor, his grantor, that he had no interest, can not be greater than that of the grantor, and that he is chargeable with direct notice that the mortgagor had acquiesced in the foreclosure sale, and that he made no claim to the property involved.

[Opinion filed June 6, 1892.]

APPEAL from the Circuit Court of Cook County; the Hon. LOREN C. COLLINS, Judge, presiding.

Appellant filed a bill, alleging himself to be the owner of certain lots in Cook county, which he sets forth were once owned by Paul Cornell, who, it is alleged, in 1876 conveyed the same to Edward F. Adams, who executed to Paul Cornell two notes for $1,300 each, and a mortgage of the lots as security therefor. The bill sets forth that Paul Cornell

assigned the said mortgage to Amos M. Moore; that in 1886, default having been made in the payment of said notes, Moore proceeded to advertise the property for sale under the powers contained in the mortgage; that the advertisement of sale was published but once, to wit, on the 4th day of June, 1886, and the premises were on July 9, 1886, sold to George Newkirk, and a mortgagee's deed of same was on the day last named made to Newkirk by said Moore.

The bill further set forth that Newkirk was the owner of the secured notes at the time he so purchased; that he had since made sale and conveyance of a portion of the said lots, and that in 1880, while the holder of said notes, he obtained a deed made under a sale had for a park assessment upon the property.

The bill charged that the sale under the mortgage was void because that the advertisement was published but once, and that Newkirk, while holding the notes, could not acquire a tax title to the premises. The complainant, offering to pay the amount found by the court that he should pay, asked that he be permitted to redeem from the mortgage and that the tax deed be set aside as a cloud. The defendants answered, denying the right of complainant to relief, setting up *laches*, etc.

Upon the hearing it appeared that the advertisement of sale was published but once; that the complainant, a lawyer, understanding that Newkirk claimed to own the property, called upon him in 1890, and asked him what its price was; that knowing that the property was foreclosed under the mortgage, and that there was a defect in the proceedings, he opened a correspondence with Mr. Adams, and from him obtained a quit-claim deed dated September 16, 1890. The complainant testified that about a week prior to the filing of the bill, he took possession of all the property except two lots, upon which a house had been built.

Edward F. Adams testified: "Reside in San Francisco, California. Know Paul Cornell. He was a neighbor of mine in Hyde Park from 1871 to 1878. Am the grantee in the conveyances dated February 9, 1876, from Paul Cornell,

conveying certain lots therein mentioned. Am also the grantor in the mortgage made and delivered to Cornell to secure my two notes of $1,300 each, due in one and two years. I have a very dim recollection that before I left Chicago, some one representing Paul Cornell, requested me to take a deed of certain lots and to give my notes secured by a mortgage, the intent being to accommodate Paul Cornell with my notes. It was understood that the notes were to be protected by Paul Cornell and never paid by me, and that upon the notes being returned to me, I should reconvey the property to Cornell. I have never considered I had any interest in that property. Can not state whether the lots in question are the precise lots, but can state that, about 1873, either myself or my wife purchased of Paul Cornell twenty-five lots at Grand Crossing, all lying south of the Lake Shore Railway. This was the only *bona fide* conveyance by Paul Cornell to me. Any other conveyance was for the purpose of accommodation; I had correspondence in regard to the reconveyance of these lots. The letters have been lost or destroyed; had no verbal communication.

" I made a conveyance of certain lots to John Evans Cornell. There was no consideration for the conveyance. I have been shown a letter dated San Francisco, October 25, 1890, to I. S. Mahon, signed E. F. Adams. The E. F. Adams whose name is signed is myself. I wrote the same; I had a letter from John E. Cornell some time in 1890, which has been lost or destroyed. The substance of the letter, as I recollect it, was that John Cornell desired that I should reconvey to him some property, doubtless the property in consideration, and requesting me to send a quit-claim deed, for which he offered to pay $50. I replied I had no claim whatever on the property. The transaction was to accommodate Paul Cornell, and if I was protected against the notes secured by the mortgage, I would reconvey the property to him; to which John Cornell replied that the property was sold under the mortgage for enough to cover my notes; that the notes were outlawed; inclosing bond of indemnity in any case. I thereupon sent a quit-claim deed to John

Evans Cornell; received no consideration. I have paid no tax on the property."

Cross-examination:

"Lived at Hyde Park at the time of the conveyance by Paul Cornell; left Cook County in 1878; never returned there as a resident; went to California; the twenty-five lots near Grand Crossing, to which I have referred, were the property I got for an equity for a house at Madison avenue. It was understood that either the property or Paul Cornell should take care of the notes; never had any negotiations with John Evans Cornell otherwise than by letter. Letters are destroyed.

"Never since obtaining title to said property have I performed any act in relation thereto. Never had any different thought or intention toward said property than I had at the time of the execution and delivery of said mortgage to Paul Cornell. I never abandoned said property, for the reason that I never took possession of it, and never claimed any interest, except as I have stated."

The complainant, as to his payment to Mr. Adams, testified as follows:

"I paid a consideration to Edward F. Adams for his deed to me. I paid it to a man in Chicago to whom he referred me, and told him to forward it to Mr. Adams."

Cross-examination:

"The name of the man I paid it to is Mr. A. H. Andrews, on Wabash avenue. I paid him $1 and told him to send it to Mr. Adams."

Paul Cornell testified that his *recollection* of the transaction between him and Edward F. Adams is, that it was a *bona fide* sale to Mr. Adams of all his interest in the property. It also appeared that Newkirk in 1876 made a loan to Paul Cornell, and that the notes and mortgage made by Adams were assigned to Moore as a trustee; that he, Newkirk, had paid the taxes on the property since 1873, having paid about $1,300 for taxes and some $800 for improvements; that when he received the special assessment deed in 1880 he owned the secured notes; that at the foreclosure sale he bid some

$4,700, and the notes were marked " Satisfied by foreclosure sale July 8, 1886."

That the property came into demand about 1889; that there was considerable increase in the price from that time on, and in 1890 the property was worth more than it had been for a number of years. The bill was filed October 23, 1890.

The court found for the defendants, and entered a decree dismissing the bill for want of equity.

Mr. F. B. DYCHE, for appellant.

Mr. JEREMIAH LEAMING, for appellees.

WATERMAN, P. J.    What constitutes such *laches* or acquiescence as will debar a party from equitable relief which he might otherwise have had, is a matter concerning which there can be no definite rule applicable to all cases. Time is not alone to be considered, but all the circumstances attending both action and non-action.

The principle embraced in the maxim *vigilantibus non dormientibus aequitas subvenit* may be invoked whenever a court of equity is asked to afford relief; and when so invoked, it is for the court to determine whether equity requires that the relief sought should be given.

In the present case it appears that Edward F. Adams having, on February 11, 1876, made a mortgage upon certain vacant lots in Illinois, to secure his two notes for $1,300 each, maturing in one and two years, respectively, never thereafter paid either taxes or assessments upon the lots, or principal or interest of the mortgage; that in 1886, the owner of the notes caused a sale under the power contained in the mortgage deed to be had, and at the sale himself bid in the property for the entire amount of the mortgage debt.

That more than four years thereafter the mortgagor, who for twelve years had been a resident of another State, quitclaimed without consideration his interest in the premises to the complainant; that the purchaser at the mortgage

sale has paid all the taxes for seventeen years, amounting to some $1,300; that he has made valuable improvements upon a portion of the lots and sold others.

The sale was one which might have been set aside had application been made in proper time; but we think that the circumstances show inexcusable *laches* on the part of the mortgagor. Not until there had been a considerable increase in the value of the property and it had come into demand, was an offer to redeem made. In Bush v. Sherman, 80 Ill. 160, in discussing this subject the court said: "The principle that lies at the foundation of all the cases in this court upon this subject is, the party who challenges a sale on account of irregularities that may have intervened, must be diligent in discovering that which he alleges will avoid the sale, and diligent in his application for relief." The cases in which the principle above stated has been applied in this State are numerous. Hoyt v. Pawtucket Inst. for Savings, 110 Ill. 399; Speck v. Pullman Co., 121 Ill. 60; McHany v. Shenck, 88 Ill. 365; Fitch v. Willard, 73 Ill. 107; Estes v. Furlong, 59 Ill. 302; Hamilton v. Lubukee, 51 Ill. 420; Sloan v. Graham, 85 Ill. 30; Williams v. Rhodes, 81 Ill. 571; Breit v. Yeaton, 101 Ill. 242; Munn v. Burges, 70 Ill. 604; Dempster v. West, 69 Ill. 613; Maher v. Farwell, 97 Ill. 56; McDonald v. Stow, 109 Ill. 40; Nichols v. Otto, 132 Ill. 91.

It is urged by appellant that the foreclosure proceedings, not being in compliance with the statute, were utterly void, and that no rights could be acquired thereunder. It is true that such proceedings have sometimes been spoken of as void; but our attention has not been called to any case in which, the distinction between a void and a voidable proceeding being in issue, the court has pronounced the making of a sale and the execution of a conveyance thereunder, such as this, void, unless the statute itself expressly declared that sales made without compliance with its provisions, should be void. If the foreclosure proceedings were void, then the title conveyed to Paul Cornell by the mortgage deed to him made by Adams yet remains in said Cornell. Appellant did not think it necessary to make either Paul Cornell or

his assignee, Moore, a party to his bill, doubtless because he recognized that the title of Paul Cornell so acquired was divested by the foreclosure proceedings.

We are also of the opinion that the mortgagor has acquiesced in the mortgage sale; nothing in addition to the failure by the mortgagor for years to pay either taxes or assessments upon this property, could more strongly show an abandonment of the property to the mortgagee and an acquiescence in whatever he did in respect thereto, than the fact that Adams, who made the mortgage, declares that he never had any equitable interest in the premises; that the conveyance to, and the making of the mortgage by him, was entirely for the accommodation of Paul Cornell, and that Paul Cornell testifies that his recollection of the transaction is, that it was a *bona fide* sale to Adams.

Here, then, was a piece of property in which it appears for fourteen years no one save the mortgagee and his grantees made any claim, or did anything indicating that they had or felt any interest in; upon which the mortgagee, meantime, made valuable improvements and paid large sums for taxes and assessments; and which property was under powers contained in the mortgage deed in July, 1886, sold and conveyed to the mortgagee, the sale being irregular and invalid; that thereafter the property considerably advanced in value. Under these circumstances, disclaiming that he had any interest in the property, in September, 1890, the mortgagor, without consideration, conveyed to the complainant.

The equity of the complainant, who has paid nothing, and who, before he took a conveyance, was informed by his grantor that he had no interest, can not be stronger than was that of his grantor; he is chargeable with the direct notice, to him given, that the mortgagor had acquiesced in the foreclosure sale, so that he made " no claim whatever on the property."

It is quite true that it is no concern of the mortgagee and his grantees upon what terms complainant acquired his alleged title; but the conduct of his grantor prior to and at the time of the conveyance, and his declarations to the com-

plainant, are pertinent upon the question of whether he had acquiesced in the foreclosure.

Nor can the fact that it does not appear that Adams was informed of the sale and the improvements made upon the property, prevent an arising of a presumption of acquiescence. He voluntarily went and remained two thousand miles away, in another State; he neglected to pay or attempt to pay taxes, which he must have known accrue on all real property; and when the fact of the sale was made known to him, he disclaimed all interest in the property.

As is said in Bush v. Sherman, 80 Ill. 175, quoted with approval in Cleaver v. Green, 107 Ill. 67–73, and Nichols v. Otto, 132 Ill. 91–98, " The party who challenges a sale on account of irregularities that may have intervened, must be diligent in discovering that which he alleges will void the sale.

The decree of the Circuit Court is affirmed.

*Decree affirmed.*